PANHANDLE & S. F. RY. CO. v. BELL.
(No. 1064.)

(Court of Civil Appeals of Texas. Amarillo.
Nov. 22, 1916.)

1. CARRIERS ☞218(10) — INTERSTATE SHIPMENT—ORAL AND WRITTEN CONTRACTS.
The written contract for an interstate shipment, contemplated by Carmack Amendment (Act Cong. June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 595 [U. S. Comp. St. 1913, § 8592]) being free from fraud, prevails over the precedent oral contract, so that provision of the written contract for notice of claim of damages, if reasonable, controls.
[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 947; Dec. Dig. ☞218(10).]

2. CARRIERS ☞218(3)—LIVE STOCK SHIPMENT—NOTICE OF CLAIM OF DAMAGES.
As regards a claim for shrinking of live stock in transit, provision of contract for interstate carriage, for notice of claim before removal from destination, is reasonable.
[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 938; Dec. Dig. ☞ 218(3).]

3. CARRIERS ☞218(5)—LIVE STOCK SHIPMENT—CONTRACT—SEPARABLE PROVISIONS.
The provisions of a contract for live stock shipment for notice of claim for damages and that the stock shall not be removed for three hours after notice are separable, so that any invalidity in the provision as to removal does not excuse the shipper from giving notice.
[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696; Dec. Dig. ☞218(5).]

4. CARRIERS ☞218(10) — LIVE STOCK SHIPMENT—NOTICE OF CLAIM.
Damage from decline in market price during delay in transportation of live stock is not within the provision of the contract of shipment for notice of claim for loss or injury to stock during transportation.
[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 947; Dec. Dig. ☞ 218(10).]

5. APPEAL AND ERROR ☞1066—PREJUDICIAL ERROR—INSTRUCTIONS.
A charge submitting the issue of fraud on facts pleaded as such, insufficient to constitute fraud, is prejudicial.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. ☞1066.]

6. COURTS ☞121(6)—JURISDICTION—AMOUNT IN CONTROVERSY—PARTIAL ELIMINATION.
The amount sued for being enough to give the trial court jurisdiction, elimination of one of the items by the judgment on appeal will not affect the jurisdiction of the trial court on a new trial as to the remaining item.
[Ed. Note.—For other cases, see Courts, Cent. Dig. § 421; Dec. Dig. ☞121(6).]

7. TRIAL ☞253(6)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE—"SHEEP."
The term "sheep" including ewes and lambs, a requested instruction requiring a finding that there was no decline in market value of sheep, when there was such evidence as to either ewes or lambs, is erroneous.
[Ed. Note.—For other cases, see Trial, Cent. Dig. § 618; Dec. Dig. ☞253(6).
For other definitions, see Words and Phrases, First and Second Series, Sheep.]

Appeal from Deaf Smith County Court; Jas. A. Hughes, Judge.

Action by A. G. Bell against the Panhandle & Santa Fé Railway company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Terry, Cavin & Mills, of Galveston, Madden, Trulove, Ryburn & Pipkin, of Amarillo, and Gilliland & Estes, of Hereford, for appellant. Russell & Dameron, of Hereford, for appellee.

HENDRICKS, J. This is a suit for damages alleged to have accrued on account of an interstate shipment of ten cars of sheep, from Hereford, Tex., to Kansas City, Mo. It was alleged that the sheep were delayed and held in the pens at Waynoka, Okl., some 30 hours without proper feed and water, and were also held some 10 hours at said point on the cars.

The elements of damage alleged were on account of shrinkage and injury to the sheep, amounting to $825, with the further demand of a loss of $170, arising on account of a decline of market between different dates. The shipments moved under a written contract, executed September 24, 1914, providing for the transportation of the sheep at a lower rate and likewise for the transportation of two caretakers, who accompanied the stock to destination.

Paragraph 8 of the livestock contract, pleaded by the defendant railway company, stipulates as follows:

"Eight. In order that any loss or damage to be claimed by the shipper may be fully and fairly investigated and the fact and nature of such claim or loss preserved beyond dispute and by the best evidence, it is agreed that as a condition precedent to his right to recover any damages for any loss or injury to his said stock during the transportation thereof, or at any place or places where the same may be loaded or unloaded for any purpose on the company's road, or previous to loading thereof for shipment, the shipper or his agent in charge of the stock will give notice in writing of his claim therefor to some officer of said company, or to the nearest station agent, or, if delivered to consignee at a point beyond the company's road, to the nearest station agent of the last carrier making such delivery, before such stock shall have been removed from the place of destination above mentioned, or from the place of delivery of the same to the consignee, and before such stock shall have been slaughtered or intermingled with other stock, and will not move such stock from said station or stockyards until the expiration of three hours after the giving of such notice; and a failure to comply in every respect with the terms of this

clause shall be a complete bar to any recovery of any and all such damages."

The plaintiff replied to this pleading that the shipping contract was presented to him for signature when the train was ready to depart, and was not offered in time within which to read it; that he was led to believe that the shipment would not move unless he signed the contract, and, though he had been shipping for years, he did not know the contents of the same, but thought it was for transportation for himself and caretaker; that the same is unjust, unreasonable, and illegal, and that his shipment was in reality made under a verbal contract consummated before the written contract was signed, and that he was not bound by said written contract.

Plaintiff testified:

"That is the contract [indicating the shipping contract] which I signed and shipped this shipment on; at the time I signed that contract the agent said nothing about two different rates; I was in the freight office when I signed that contract; the contract was not explained to me, as I have before stated, but I understood it; we always sign those contracts."

The trial court in part charged the jury in substance that if they believe that the contract was a voluntary and mutual agreement between the parties, fixing their rights and liability under the shipment, and further believed that the terms contained therein with reference to notice of a claim for damages were reasonable, and that the plaintiff gave no notice, to find for the defendant. He further charged:

"But, on the other hand, should you believe from a preponderance of the evidence that the stipulations in said written instrument are unreasonable, or that said instrument was procured from plaintiff Bell, through the fraud of the defendant, or was without consideration, as alleged by plaintiff, in that at the time said cars were ordered no written contract was demanded"

—and that the cars were furnished and the sheep loaded therein under a verbal order, and that the written instrument was presented to plaintiff after the sheep were loaded and immediately before the train departed, and that plaintiff had no time in which to read the same and did not know the contents thereof, and signed it under such conditions, the written instrument would not be the contract, and the agreement to give notice of damage would not be binding.

It was proven at the trial that Mr. Brooks, the general livestock agent of the Santa Fé, had his office in the Livestock Exchange Building in Kansas City, Mo., and that Bell knew of it. It is also shown that the delivering carrier at Kansas City had a station agent at that place. The plaintiff failed to give any notice of claim of damages imposed by the particular provision.

The defendant asked for a peremptory instruction, which was refused by the trial court; and also objected to the charge of the court submitting to the jury the question whether or not the contract was procured to be signed by Bell, through the fraud of the defendant, in that there is no evidence whatever of fraud practiced on Bell in procuring his signature to said contract.

The trial court also stated in his charge that:

"Plaintiff answers * * * by plea that such contract was a fraud on him, that he did not know its contents and terms, and had no opportunity to read and understand same before signing it, and is not bound by its terms."

Defendant also objected to this statement, claiming that the same is erroneous—

"in that said supplemental petition, although it charges that defendant did practice fraud on plaintiff, charges the facts upon which the alleged fraud was based, and such facts so charged do not constitute fraud, and said charge in that respect assumes an issue not presented by the pleading nor by the evidence."

The record shows that the injury to the sheep, aside from the damages claimed on account of a decline of market, occurred in transportation on the line of connecting carrier. We would seriously doubt, upon this record, without viewing the Carmack Amendment to the Hepburn Act, as controlling the shipment, whether a preliminary oral contract for through transportation was sufficiently proven for the purpose of invoking the liability of the initial carrier for the negligence of a connecting carrier, and as an avoidance of the written contract.

"It is a general rule of law, supported by the weight of authority and by sound reasoning, that in the absence of an agreement or course of business to the contrary, the initial carrier is bound only to safely carry and deliver to the next carrier. * * * A local * * * agent of a railroad company ordinarily has no authority to bind the corporation to carry freight beyond its [own] line." Railway Co. v. Jackson & Edwards, 99 Tex. 347, 89 S. W. 969.

Because the initial carrier receives goods marked for transportation beyond its own line or quotes the rate of freight over the whole distance, or because previous to the shipment there was proof of one shipment over the same road to the point of destination and arrangements for cars and rates, and the fact that through freight was collected at the destination, are insufficient to prove authority on the part of the local agent to make a contract to transport over other lines of road. Blackburn v. Railway Co., 52 Tex. Civ. App. 444, 445, 115 S. W. 874 (writ of error refused); Hunter v. Railway, 76 Tex. 196, 13 S. W. 190; also Miller v. Texas & N. O. Ry. Co., 83 Tex. 519, 18 S. W. 954, and Gulf, C. & S. F. Ry. Co. v. Baird, 75 Tex. 259, 12 S. W. 530; Hutchinson on Carriers, §§ 145, 170.

The Supreme Court of the United States, in the case of Railway Co. v. Myrick, 107 U. S. 102, 1 Sup. Ct. 425, 27 L. Ed. 325, held that an agreement for through transportation will not be inferred from doubtful expressions or loose language, and what constitutes a contract of carriage for through transportation was a matter of general law,

upon which that court would exercise its own judgment.

[1] But, arguing the case from another angle: It is apparent that the charge of the court conveys the idea that the alleged fraud submitted by him to the jury consisted of the matters stated in said charge surrounding the execution of the bill of lading. It is true our courts have previously argued and decided that an element of duress enters into the execution of live stock contracts under the conditions stated in the trial court's charge; also, where a previous consummated oral contract has been made for the shipment, they have asserted a failure of consideration for the written contract, and permitted recoveries upon such antecedent oral agreement. This court now concludes that a written contract, if unobjectionable in other respects, signed by the shipper and the agent, with reference to transportation, where the subject is interstate, as applied to damages accruing on the line of a connecting carrier, control the liability, and the oral contract is superseded.

The undisputed evidence in this case shows a special consideration for the limited liability, based on the lower of two rates as applied to the shipment of sheep, as per published tariffs on file at Hereford. We are not holding that such a special consideration is necessary as applied to the provision with reference to the notice of claim for damages at destination, but such an element may, to some extent, be appropriately mentioned as aiding this argument.

One of the dominating features of the Carmack Amendment is the prescribed issuance by the carrier to the shipper of a written bill of lading, or receipt, for the goods by the initial carrier. Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 151, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257.

Justice Van Devanter of the United States Supreme Court, in passing upon a provision in a live stock contract, requiring notice in writing of the claim before the stock had been removed from the place of destination, said that the laws in force at the time of the execution of the contract, affecting its validity, performance, and enforcement, form a part of the contract, as if they were expressly referred to or incorporated in same. He also said:

"A bill of lading is a contract and within this rule, The Carmack Amendment, * * * which was in force when this bill of lading was issued, directs a carrier receiving property for interstate transportation to issue a through bill of lading therefor, although the place of destination is on the line of another carrier. * * * This bill of lading was issued under that statute and should be interpreted in the light of it." Northern Pac. Ry. Co. v. Wall, 241 U. S. 92, 36 Sup. Ct. 495, 60 L. Ed. 905.

It is not an open question but what, if any loss on account of the death of any of the sheep had occurred in the course of transportation, the limitation of agreed value

with the initial carrier, for the purpose of securing the lower of the two rates of freight, would have been binding upon the plaintiff on account of the Carmack Amendment. Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Carl Case, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; Harriman Case, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690.

The connecting carrier, participating with the initial carrier in the lower freight rate, necessarily would only have been bound to that extent; the Carmack Amendment makes the connecting carrier respond to and reimburse the initial carrier for the loss or injury recovered against said initial carrier, on account of the latter's negligence, and the bill of lading for through transportation, which the law requires the initial carrier to issue, if it were to provide for a shipment under a lower freight rate, based on filed tariffs, the agreed value would be the criterion and measure of the damages. Santa Fé Ry. Co. v. Robinson, 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901.

The Robinson Case, supra, is an interesting and instructive case where the market value, instead of the agreed value, was contended for as the measure of damages, because a consummated oral contract was made previous to the shipment and the written contract—the plaintiff alleging in substance what is alleged here. The stock, a valuable race horse, was shipped on a lower freight rate, based on filed freight rates. The federal Supreme Court said, after citing numerous cases by that court:

"We regard these cases as settling the proposition that the shipper as well as the carrier is bound to take notice of the filed tariff rates, and that so long as they remain operative they are conclusive as to the rights of the parties, in the absence of facts or circumstances showing an attempt at rebating or false billing. Great Northern R. Co. v. O'Connor [232 U. S. 508, 34 Sup. Ct. 380, 57 L. Ed. 703], supra. To give to the oral agreement upon which the suit was brought the prevailing effect allowed in this case by the charge in the trial court, affirmed by the judgment of the Supreme Court of the state, would be to allow a special contract to have binding force and effect, though made in violation of the filed schedules which were to be equally observed by the shipper and carrier. If oral agreements of this character can be sustained, then the door is open to all manner of special contracts, departing from the schedules and rates filed with the commission. Kansas City Southern R. Co. v. Carl, 227 U. S. 652, 33 Sup. Ct. 391, 57 L. Ed. 688. To maintain the supremacy of such oral agreements would defeat the primary purposes of the Interstate Commerce Act, so often affirmed in the decisions of this court, which are to require equal treatment of all shippers and the charging of but one rate to all, and that the one filed as required by the act."

The question varies only in form from that case to this; the principle is equally applicable. If the precedent consummated oral contract would not prevail over the written contract as to agreed value, as held in the Robinson Case, supra, it would not prevail over

it for any purpose if the contract was reasonable.

The cases of Railway Co. v. Dettlebach, 239 U. S. 588, 36 Sup. Ct. 178, 60 L. Ed. 453, and Railway Co. v. Prescott, 240 U. S. 632, 36 Sup. Ct. 471, 60 L. Ed. 836, followed by this court in the case of Railway Co. v. Smyth, 189 S. W. 70, decided by this court October 18, 1916, are also profitable on this subject. The Smyth Case suggests the same conclusion as in this case—the facts, however, are different.

There is really no pretension of fraud in regard to the signature of Bell to the written contract, nor any overreaching by the agent with reference to its execution, and we are convinced that the Supreme Court of the United States, especially applicable to a record of this character, wholly excludes any proposition of a lack of consideration of the written contract because an oral contract had previously been made; hence the provision with reference to notice of a claim for damages, if reasonable, should control.

[2, 3] As applied to the shrinkage of the sheep, and the accrued damages ascertainable at destination, arising in transportation, we interpret the case of Railway Company v. Wall, supra, by the Supreme Court of the United States, as either determining, or strongly persuasive, that provisions of this character requiring notice of a claim for damages before the cattle are removed from destination, are reasonable. Upon the first consideration of the instant case we were concerned with the clause requiring the shipper not to remove the cattle for three hours after the notice of claim was given. It was thought perhaps that such a provision would either be reasonable or unreasonable, according to conditions, and hence a jury question; and that if a jury were to decide that as applied to this character of shipment that a three hours' retention of the sheep in the stock pens after such notice was given would be unreasonable, then the other duty devolving upon the shipper to give notice in the first instance might also be void; that the good and the bad were blended and intertwined to that extent that they could not be severed, and the whole provision would fail. The case of Railway Co. v. Evans-Snider Buel Co., 42 Tex. Civ. App. 63, 93 S. W. 1025, is an aid to such a contention; the provision under consideration in that contract being exactly the same as in this case. It was said:

"The parts and requirements specified in this * * * contract are so interdependent that they become inseparable, and as a whole are unreasonable and void."

The Supreme Court of the state, however, granted a writ of error, disagreeing with such holding, but affirmed the cause because the application for the writ of error did not raise the particular question. P. & N. O. Ry. Co. v. Evans-Snyder Buel Co., 100 Tex. 191, 97 S. W. 466.

The case of Gulf, Colorado & Santa Fé Ry. Co. v. Hume Bros., 87 Tex. 219, 27 S. W. 112, is clearly distinguishable from this case. Chief Justice Brown stated the rule in the Hume Case as:

"When one for a legal and valuable consideration agrees to perform two acts which are severable, one of which is lawful and the other unlawful, the contract may be enforced as to that for which it was lawful to contract, and held void as to the other."

The Supreme Court of the United States, in speaking of certain provisions of a contract claimed to be invalid, said:

"Conceding this to be so, they are clearly separable and severable from the other parts which are relied upon. The rule in such cases, where there is no imputation of malum in se, is that the bad parts do not affect the good. The valid may be enforced." Gelpcke v. Dubuque, 1 Wall. 221, 222, 17 L. Ed. 519, 520.

See particularly Haswell v. Blake, 90 S. W. p. 1127, and citation of numerous authorities (writ of error denied by the Supreme Court).

As stated, besides other considerations, there is a special consideration that the shipment was based upon a lower freight rate. The two things imposed upon the shipper—first, the giving of the notice of the claim for damages; and, second, refraining from removing the cattle for three hours, after the notice was given—are clearly separable, though it were said that the second provision was unreasonable. The shipper would not be excused from giving the notice.

[4] The damages arising on account of the decline in the market do not come within the purview of this particular contract as to the notice of claim for damages. Railway Co. v. Evans-Snyder Buel Co., 100 Tex. 191, 97 S. W. 467. As to a contract using exactly the same language as used in this, the Supreme Court said:

"Such damages could not in any just sense be considered as embraced in the language 'loss or injury to his said stock.' "

[5] We are not sustaining the assignment based upon the peremptory instruction. It could not have been given because it would have excluded the damages based on the decline in the market value of the sheep as to which the notice would not be required. However, the assignments based upon the statement in the court's charge, as reflecting the supplemental petition as to the issue with reference to fraud, and the particular paragraph of his charge submitting such a question to the jury, both challenging the same as erroneous, will have to be sustained. Railway Co. v. Sage, 98 Tex. 440, 441, 84 S. W. 814.

Under the opinion of the state Supreme Court, supra, we feel that we are required to hold that such a charge must be regarded harmful. The jury could very well have considered that the elements set out in the charge, alleged to have been surrounding the parties when the contract was signed, constituted fraud sufficient to overthrow the writ-

ten contract. Such an instruction is prejudicial. Railway Co. v. Sage, supra.

[6] If the railway company continues to interpose the provision of its contract as a defense, in regard to a failure to give a notice of claim for damages accruing on account of the loss from injury to the stock, in transportation, the trial court is instructed, upon the same state of facts, to sustain the same. This would leave in the petition the damages, alleged to be $170, on account of the decline in the market value of the sheep, and upon the question of jurisdiction, we think the case of Cattlemen's Trust Co. v. Blasingame, upon motion for rehearing, 184 S. W. 579, 580, and the Supreme Court case of Railway Co. v. Grayson Co. Nat. Bank, 100 Tex. 17, 93 S. W. 431, control, and that the county court would continue to have jurisdiction of the question of decline in market value, and the amount remaining therein to be litigated.

[7] Appellant's requested charge No. 2, as applied to this record, in using the term "sheep," in failing to draw any distinction between ewes and lambs, was too general. There was testimony at least of the decline in the market value of one class, and under the requested charge the jury was directed to find there was no testimony as to both; the term "sheep" includes both ewes and lambs. The remaining assignments are unnecessary to discuss, and are overruled.

Reversed and remanded.