WILLIAM F. MASON *vs.* MAINE CENTRAL RAILROAD COMPANY.

## Lincoln.    Opinion June 3, 1920.

*Common carrier may limit its responsibility.    Reasonable and suitable restrictions.*
*Knowledge and assent of consignor thereto necessary.*

This is an action on the case to recover damages for failure to deliver certain
Christmas trees in time for the plaintiff's Christmas business in the Boston
market.    The case comes before the court on report on an agreed statement of
facts.

*Held:*

1.   It is well settled that a common carrier may limit his responsibility for prop-
erty entrusted to him by a notice containing reasonable and suitable restrictions
if brought home to the owner of the goods delivered for transportation, and
assented to clearly and unequivocally by him.

2.   The defendant does not claim that the plaintiff knew the import of the
memorandum and stamp referred to as an amendment to the bill of lading, or
that his attention had been called to the meaning of the same, or the location
and provisions of any document containing the tariff or classifications filed as
alleged.    The agreed statement is silent as to these matters, and being so we
think the plaintiff is not legally chargeable with knowledge of the terms of such
amendment, nor should it be held that he ought to have known, and that he is
therefore precluded from recovering.    The words "Section 3 is amended, as per
classification governing" printed, apparently with a rubber stamp, upon a slip
of adhesive paper affixed to the face of the bill of lading, cannot be held to
charge the plaintiff with notice of a limitation of the time within which an
action for the recovery of damages for the breach of the contract of carriage may
be brought; especially since section three, as printed on the back of the bill of
lading, does not mention any such limitation.

3.   The agreed facts present a Federal question under the following clause and
the amendment therein quoted, "that the official classification 43, effective
Jany. 1, 1916, and supplement No. 8, to said official classification July 1, 1916,
were in full force and effect and properly filed in accordance with the United
States law and the rulings of the Interstate Commerce Commission."    As to
defendant's contention thereunder, we are of the opinion that the rights of the
plaintiff are not cut off by the Interstate Commerce Act of 1887, and the
Carmack amendment of the Hepburn Act of 1906.

4.   Freight rates are controlled by the schedules and tariffs on file with and
approved by the Commission, but provisions relating to the limitations of
actions are controlled by special contracts made between the parties and subject
to the approval of the Commission.    The fact that the Commission has given
the carrier the right to make a given contract does not authorize its enforcement
unless and until the contract is in fact made.

No special contract was made here, and therefore the plaintiff is not bound by the so called amendment filed by the defendant with the Commission.

On report. An action on the case to recover damages for failure to deliver Christmas trees in time for plaintiff's Christmas business in Boston. Plea, general issue and brief statement. By agreement the damages were to be $300 if plaintiff's case was sustained. The case was reported to the Law Court on an agreed statement of facts. Judgment for the plaintiff for $300.

Case stated in the opinion.

Sitting: Cornish, C. J., Hanson, Philbrook, Dunn, Morrill, Deasy, JJ.

Hanson, J. This is an action on the case to recover damages for failure to deliver certain Christmas trees in time for the plaintiff's Christmas business in the Boston market. The case comes before the court on report on an agreed statement of facts.

"It is admitted that all the facts and averments contained in the plaintiff's declaration are true. By agreement the damages are liquidated in the sum of three hundred dollars. The goods were shipped under a written contract of carriage known as a bill of lading, that the date of the writ is February 11, 1919; that the official classification No. 43, effective January 1, 1916, and supplement No. 8, to said official classification effective July 1, 1916, were in full force and effect and properly filed in accordance with the United States law and the rulings of the Interstate Commerce Commission, and also in accordance with the laws of the State of Maine and the rulings of the Maine Public Utilities Commission on the date of the shipment, and are the same as referred to on the face of the bill of lading, as shown by Plaintiff's Exhibit No. 1. That the amendment referred to of the bill of lading, Plaintiff's Exhibit No. 1, is as follows: Supplement No. 8, to Official Classification No. 43, page 9, Amendment to Section 3,—Section 3 entitled Bill of Lading Conditions: 'Except where the loss, damage, or injury complained of is due to the delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, as conditions precedent to recovery, claim must be made in writing of the originating or delivering carrier within six months after delivery of the property (or, in case of export traffic,

within nine months after delivery at port of export), or, in case of failure to make delivery, then within six months (or nine months in case of export traffic) after a reasonable time for delivery has elapsed; and suits for loss, damage, or delay shall be instituted only within two years and one day after delivery of the property, or, in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed.' "

That the bill of lading—Plaintiff's Exhibit No. 1 contains on its face, just above line of destination and shipper's name, the following: "Received, subject to the classifications and tariffs in effect on the date of issue of this shipping order," that the same form of bill of lading was used by said defendant company in interstate and intra-state commerce shipments; that the suit was commenced after two years and one day after delivery of the property had been made.

The sole issue to be argued before the Law Court is—"Can the plaintiff maintain this action where the same was not brought within two years and one day from the date of delivery of the trees in Boston?"

The declaration is in the usual form and alleges carelessness and negligence on the part of the defendant company, and concludes as follows: "Whereby and by reason of all which carelessness, negligence and delay on the part of the defendant, its agents and servants as heretofore alleged, the plaintiff was put to great damage, etc."

The defendant contends that the action cannot be maintained, and counsel in their brief urge "that the law is well settled and clearly stated in this state, upholding such limited liability contracts," and cite *Young* v. *R. R. Co.*, 113 Maine at page 116, *Fisher* v. *R. R. Co.*, 99 Maine at page 341, *Little* v. *B. & M. R. R.*, 66 Maine, at page 240, and *Hix* v. *Steamship Company*, 107 Maine, 359, as sustaining their claim. If counsel had omitted the word "such," we could agree with the statement of the law without further comment. We are unable to adopt the defendant's application of the law as stated in its citations. In *Hix* v. *Steamship Company*, supra, upon which defendant places most reliance, the court say: "No principle of law is now more firmly established than that a common carrier in the absence of any statute to the contrary, may by special contract limit its liability, at least against all risks but its own negligence or misconduct." The case there under consideration, as well as all cases cited therein, had in view a bill of lading wherein was printed the terms of

the contract of affreightment, and in such a manner that there could be no escape for a plaintiff from the rule that the law presumes, in the absence of fraud or imposition, that the plaintiff did read the contract, or was otherwise informed of its contents, and was willing to assent to its terms without reading it. But this case from the agreed facts does not fall within the cases there reviewed. The terms involved were not printed on the face or on the back of the bill of lading, but a notice by a stamp impression does appear on the face of the bill of lading that "section 3 is amended, as per classification governing." The section referred to is printed on the back of the bill of lading. In all other respects the document is the standard uniform bill of lading. In *Gerry* v. *Express Co.*, 100 Maine, 519, cited with approval in *Hix* v. *Steamship Company*, supra, the court say: "It is well settled that a common carrier may limit his responsibility for property entrusted to him by a notice containing reasonable and suitable restrictions if brought home to the owner of the goods delivered for transportation, and assented to clearly and unequivocally by him," and if it appears "that the terms on which the carrier proposed to carry the goods were adopted as the contract between the parties, according to which the service of the carrier was to be rendered." *Fillebrown* v. *Grand Trunk Ry.*, 55 Maine, 468.

The defendant does not claim that the plaintiff knew the import of the memorandum and stamp referred to, or that his attention had been called to the meaning of the same, or the location and provisions of any document containing the tariff or classifications filed as alleged. The agreed statement is silent as to these matters, and being so we think the plaintiff is not legally chargeable with knowledge of the terms of such amendment, nor should it be held that he ought to have known, and that he is therefore precluded from recovering. The words "Section 3 is amended, as per classification governing" printed, apparently with a rubber stamp, upon a slip of adhesive paper affixed to the face of the bill of lading, cannot be held to charge the plaintiff with notice of a limitation of the time within which an action for the recovery of damages for the breach of the contract of carriage may be brought; especially since section 3, as printed on the back of the bill of lading, does not mention any such limitation.

The agreed facts present a Federal question under the following clause and the amendment therein quoted, "that the official classification 43, effective Jany. 1, 1916, and supplement No. 8, to said official

classification July 1, 1916, were in full force and effect and properly filed in accordance with the United States law and the rulings of the Interstate Commerce Commission." As to defendant's contention, thereunder, we are of the opinion that the rights of the plaintiff are not cut off by the Interstate Commerce Act of 1887, and the Carmack amendment of the Hepburn Act of 1906. The particular provision in that act as amended which applies to the limitation of actions is as follows:

"Provided further that it shall be unlawful for any such common carrier to provide by rule, contract, regulation or otherwise a shorter period for giving notice of claims than ninety days, and for the filing of claims for a shorter period than four months, and for the institution of suits than two years." U. S. Comp. St. 1916, Sec. 8604a.

1. It is of course now firmly established that by the Carmack amendment the subject matter of the liability of railroads under bills of lading issued for interstate freight is placed under Federal regulation so as to supersede the local law and policy of the several States, whether evidenced by judicial decision, by statute or by constitution. On this subject the Federal law is supreme. *Adams Express Co.* v. *Croninger*, 226 U. S., 491; *Boston & Maine R. R.* v. *Hooker*, 233 U. S., 97.

2. One of the chief features of the Carmack amendment was the requirement that the carrier must issue to the shipper a bill of lading, in form approved by the Interstate Commerce Commission. And this bill of lading constitutes the contract between the parties and regulates and defines their respective rights and liabilities.

3. The right of a carrier to reasonably limit, by express agreement with the shipper, its liability, so far merely as the time within which notice of loss should be given or suit brought, has always been recognized. *Express Co.* v. *Caldwell*, 21 Wall., 264.

4. This right of special agreement was neither created nor destroyed by the Carmack amendment, but was recognized as valid within certain specified limits, viz: Notice of claims not to be fixed by contract at less than ninety days, filing of claims to be fixed by contract at not less than four months, and institution of suits at not less than two years. But this limit must be by stipulation.

5. Acting within statutory authority the bill of lading in this case was prepared in standard form, and was approved by the Interstate Commerce Commission, by order of June 27, 1908. Section 3 of the

conditions printed on the back, provided among other things, as follows: "Claims for loss, damage or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property, or in case of failure to make delivery, then within four months after a reasonable time for delivery. Unless claims are so made the carrier shall not be liable."

Under the Federal statutes this condition was a reasonable one, and when assented to by the shipper it became a valid stipulation or contract between the parties, and the shipper was bound by it. As it was fully printed and clearly expressed on the back of the bill, and as the shipper signed and accepted the bill of lading with this printed condition upon it, his assent is presumed and the special contract was completed.

If the shipper in this case had not given notice or filed his claim within the time specified in his contract, he would undoubtedly be precluded from recovery.

6. But the defense offered here is that the action was not brought within two years from the date of the delivery of the trees to the consignee.

That is a good defense provided the parties have made a stipulation to that effect. *M. K. & T. Ry.* v. *Harriman*, 227 U. S., 657. But that stipulation has not been made. The only approach to it is a slip pasted on the face of the bill of lading, containing these words; "Section 3 is amended as per classification governing." It gives no hint as to what that amendment might be. Section 3 relates to various subjects; the first clause relates to the carrier's duty to forward by any particular train or route; the second, to the method of computing the value in case of loss; the third, to time of making and filing claims, which we have already considered; and the fourth, to the benefit of insurance on the property.

There is not one word pertaining to the time within which action may be brought, and the natural assumption in this State would therefore be six years. The reader of the pasted slip, which simply informs him that section 3 is amended as per classification governing, would have the right to assume that one of the four clauses above specified was amended. He might perhaps be put on his guard were that the case. Here, however, there was no amendment of any one of the clauses, but an entirely new subject introduced by way of addition. It was not germane as an amendment. It now proves to

be a new condition, specifying the time within which suit must be brought or otherwise the action would be barred, and there is not the slightest suggestion of such a limitation either on the bill of lading itself or on the slip. It served as a trap, and by simply signing the bill of lading with this slip on it we cannot hold that the shipper had assented to the unseen and unknown addition and had entered into a special contract with the carrier. That is, in our opinion, taking an unfair advantage of the shipper who presents his goods for transportation and receives this receipt therefor. He is presumed to be bound by the stipulations recited on it, which he is at liberty to read, but he should not be bound by an independent stipulation of which he has no knowledge.

True that new condition has been filed with the Interstate Commerce Commission and the State Public Utilities Commission, but that simply means that those two boards have approved of the form of the contract for limitation of time of bringing suit, but does not do away with the necessity of the special contract being in fact made by the shipper and the carrier. If it is made, it has their approval. But their advance approval does not obviate the necessity of making the contract itself. That must be done before the shipper is bound, and that was not done in this case.

In every case that has come to our attention where the court has held such a stipulation valid and binding, it has been printed in full on the bill of lading, thus:

The four months notice clause in *Stevens* v. *Railway Co.*, 178 S. W., 810; *Sims* v. *Mo. Pac. Ry. Co.*, 163 S. W., 275; *Albrecht* v. *Penn. Ry.*, *N. J.*, law., 92 At., 381.

The five days notice in Uniform Live Stock Contract, *Ch. & O. Ry. Co.* v. *McLaughlin*, 242 U. S., 142; *Erie Ry.* v. *Stone*, 244 U. S., 332; *B. & O. R. R.* v. *Leach*, 249 U. S., 217.

The thirty-six hour notice in case of fruit, in *St. L. &c. R. R.* v. *Starbird*, 243 U. S., 592.

The ten days clause in case of live stock, *So. Pac.* v. *Stewart*, 248 U. S., 446.

Limitation of time in bringing suit in *M. K. & T. Ry.* v. *Harriman*, 227 U. S., 657; *St. L. & S. F. Ry.* v. *Pickens*, (Okla.), 151 Pac., 1055; *Texas & P. Ry.* v. *Langbehu*, 158 S. W., 244.

The provisions as to giving notice, filing claims and bringing suits are to be distinguished from those relating to rates dependent upon valuation, which are a part of the schedules of rates themselves, are published and posted in accordance with the rules and regulations, and which bind the shipper, although he may not read them. *B. & M. R. R.* v. *Hooker*, 233 U. S., supra. No special contract is needed for that. It is a part of the ordinary contract of carriage, and the shipper is bound thereby.

In short. Freight rates are controlled by the schedules and tariffs on file with and approved by the Commission, but provisions relating to the limitations of actions are controlled by special contracts made between the parties and subject to the approval of the Commission. The fact that the Commission has given the carrier the right to make a given contract does not authorize its enforcement unless and until the contract is in fact made.

No special contract was made here, and therefore the plaintiff is not bound by the so-called amendment filed by the defendant with the Commission.

In accordance with the stipulation the entry will be,

*Judgment for the plaintiff for $300.*

MORRILL, J., Concurs in result.