ISLAND LAKE OIL CO. et al. v. HEWITT.*
(No. 847.)

(Court of Civil Appeals of Texas. Beaumont. June 29, 1922. Rehearing Denied Oct. 11, 1922.)

1. **Master and servant ⬀80(9)—Evidence held not to show notice of discharge.**

In an action by an oil well driller for salary accruing after the date the work of drilling ceased because his employers were unable to proceed, *held*, on the evidence, that the circumstances were insufficient to give him notice that he was discharged as of that date.

2. **Master and servant ⬀20—Employment of oil driller held terminable at will on notice.**

A contract employing plaintiff as oil driller at a monthly salary to be increased in the event a well was brought in *held* one of unlimited duration terminable at will on notice.

3. **Master and servant ⬀7—Written contract of employment modified by parol.**

Where plaintiff, after commencing work under a written contract of employment as oil driller in a certain county, was transferred to another county and continued to work as under the original contract, such change constituted a parol modification of the contract,

the written contract not being within the statute of frauds, and the novation being on valuable consideration.

4. **Appeal and error ⬀1050(1)—Permitting employé in action for services to testify as to statements of employer held harmless error.**

In an employé's action for compensation under a continuing contract, permitting employé to testify that the vice president of the employer told him that he considered that plaintiff was in the service of the defendant during the time for which he was allowed recovery was harmless error, where the vice president later testified to the same facts without objection.

5. **Appeal and error ⬀724(2)—Assignments of error that are general will not be considered.**

Assignments of error that are too general will not be considered.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by T. P. Hewitt against the Island Lake Oil Company and another. Judgment for plaintiff, and defendants appeal. Affirmed.

J. A. Camp, of Houston, for appellants.
Maurice Hirsch and Allen Hannay, both of Houston, for appellee.

WALKER, J. On the 28th day of March, 1919, appellee and appellants entered into the following written contract:

"This agreement made and entered into this 22d day of March, 1919, by and between J. W. Goar, as president of the Island Lake Oil Company, on behalf of himself and said company, party of the first part, and T. P. Hewitt, of Damon Mound, Tex., party of the second part. witnesseth: That party of the first part has this day employed the party of the second part as oil driller upon the properties of the Island Lake Oil Company in Ft. Bend county, Tex., and hereby agrees to pay said second party the sum of three hundred dollars per month, a month to consist of thirty days' straight time. And, in addition to said salary above stated, the said first party hereby agrees to cause to be issued to second party five hundred dollars in par value of the stock of said company, in the event second party brings in a well of five hundred barrels per day or better; and in the event said second party brings in a well of five hundred barrels per day or better upon said company's holdings, the said first party, for himself, agrees to pay to said second party the sum of five hundred dollars within thirty days after said well shall have been brought in.

"It is understood and agreed that second party shall have charge of the drilling upon said company's holdings as head driller, and that he may discharge any employé at any time

---

⬀For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction November 29. 1922.

he may deem it to be for the best interest of the company.

"That second party will keep a careful log of the well at all times which log shall become the property of the first party.

"It is further agreed and understood that, in the event an oil field is brought in, first party agrees to employ second party as field superintendent, at a salary of not less than five thousand dollars per year.

"Witness our hands and seals this 22d day of March, 1919.

"[Signed]　　　Island Lake Oil Co.,
　　　　　　　"By J. W. Goar, President.
"[Signed]　　　　J. W. Goar.
"[Signed]　　　　T. P. Hewitt."

Appellee began work under this contract in Ft. Bend county, and after some weeks was transferred to Harris county, where he continued working for appellants as under the original contract until February 1, 1921. Some time in the summer of 1920 the funds of appellants became exhausted, and they were not able to proceed with the work of drilling. At that time all the employés, except appellee, were discharged, and appellant Goar went North for the purpose of raising funds to proceed with the work of drilling for oil, leaving appellee in charge of the business of appellants, to manage and direct as he would his own affairs.

This suit was brought by appellee for a balance due under that contract, and on a trial to the court without a jury judgment was entered in his favor for the sum of $1,817.65, with interest.

[1] Appellants' defense was that the facts and circumstances were sufficient to give appellee notice that he was discharged as of date the drilling ceased, or, at most, a short time thereafter. The trial court concluded:

"That no notice was given directly or indirectly to T. P. Hewitt until January 6, 1920, either by the Island Lake Oil Company or by J. W. Goar, and that until January 6, 1921, no facts and circumstances were brought to the knowledge of T. P. Hewitt sufficient to put him on notice or inquiry or to bring home notice to him or to indicate to him as an ordinarily reasonable man that the Island Lake Oil Company or J. W. Goar did not consider his employment with said defendants as still continuing."

J. W. Goar was president of the Island Lake Oil Company, and in charge of its affairs, with full authority over its business. When the funds of that company were exhausted, he went North to try to raise additional funds. He testified:

"When I left to go North I expected to raise that money and be back in a very short time; I was very optimistic; that is my nature, at least I hope so. * * * When I left and went North I left Mr. Hewitt in charge. Here is exactly the way it was: I said: 'If I go North, I am going leave this in charge of you. I want you to be on the work early and late. I want you to look after this job as you would if it was your own. I don't want you to lose an opportunity to do all you can for the Island Lake Oil Company.' That is exactly it."

Appellee testified:

"* * * As Mr. Goar would send the money down here I would go to the secretary, and he would write me out a check, and he would state that when he would write it out that that was all he had. I was not trying to get a settlement out of Mr. Goar in August so I could take another job, but at any time that Mr. Goar had not needed my services any longer and wanted a settlement I would have been glad to settle with him. The reason I did not take that job was because I was still in Mr. Goar's employ working under my contract. * * * I did not ask Mr. Goar or any one around the office whether they needed me, because, just as I stated, Mr. Goar knew I was here at his service. I wasn't figuring on the other job. * * * Mr. Goar never did indicate to me, when he would communicate with me about closing down, that he wanted to keep me in his employ, and neither did he indicate to me that he did not want to keep me in his employ. I can't say, after he ordered the thing closed down, that he indicated to me he wanted to keep me, but he never did state that he did not want me, so I still stayed on and looked after his interests. He told me to close down, but he did not tell me to quit. He told me to use my own judgment about closing down out there. He never did in any communication with me indicate that he wanted to keep me in the employ of the company after the company had closed down out there and I discharged the men; there never was anything said about it. He didn't tell me to close the well down, but he told me to use my judgment about it."

[2] The trial court's conclusion is fully sustained. Construing the contract, the trial court concluded:

"I conclude as a matter of law that the contract of March 22, 1919, between Island Lake Oil Company, J. W. Goar, and T. P. Hewitt was a valid contract, and that said contract continued as the basis of the employment of T. P. Hewitt until the 31st day of January, 1921, that said contract, although it was a contract of unlimited duration, was terminable at the will of either party, but that for termination it was necessary either for the party desiring for the termination to give actual notice to the opposite party of such desire, or for the facts and circumstances to be of such nature as to indicate to T. P. Hewitt, as an ordinarily reasonable man, that the contract was not continuing."

We believe the court correctly construed the contract in question. In 13 C. J., 606, it is said:

"Notice for the purpose of terminating liability under a continuing contract must be such

as to clearly convey the intention of the parties."

In 6 R. C. L. 895, it is said:

"It has been stated to be a rule of law that, when a contract calls for the rendition of services, if it is so far incomplete as that the period of its intended duration cannot be determined by a fair inference from its provisions, either party is ordinarily at liberty to terminate it at will on giving reasonable notice of his intention to do so."

[3] The court did not err in concluding that the written contract to work in Ft. Bend county was modified by the subsequent parol agreement to work in Harris county. Construction Co. v. Seng (Tex. Civ. App.) 179 S. W. 1103; Railway Co. v. Bell (Tex. Civ. App.) 189 S. W. 1097; Weeks v. Stevens (Tex. Civ. App.) 155 S. W. 667. The written contract was not within the statute of frauds, and the novation was on a valuable consideration. On these facts, appellee's written contract with appellant consisted, as a whole, "of the original contract, together with the oral modifications." 25 R. C. L. 708, § 352.

[4] If the court erred in permitting appellee to testify that a Mr. Hamilton, vice president of the Island Lake Oil Company and one of its directors, told him that he considered that appellee was in the service of the appellant during the time for which he was allowed recovery, such error was harmless, because Mr. Hamilton himself was permitted to testify to the same facts without objection.

[5] Appellants' first, second, third, and sixth assignments of error are as follows:

(1) "The court erred in rendering judgment in this cause for the plaintiff because it is not supported by the court's findings of fact and conclusions of law filed herein."

(2) "The court erred in holding that the defendant J. W. Goar was liable under contract of March 22, 1919, for work and services performed by the plaintiff in Harris county, Tex."

(3) "The court erred in rendering judgment for the plaintiff because the same is not supported by the evidence or pleadings in the case."

(6) "The court erred in its finding of facts because the same is not supported by the evidence adduced in the trial of said cause or by the pleadings in said cause."

These assignments are too general, and under the rules cannot be considered. Bean v. Hinson (Tex. Civ. App.) 235 S. W. 328. But we say we have carefully examined the propositions advanced under these assignments, together with the statements made in support thereof, and in our judgment they show no error.

The judgment of the trial court is in all things affirmed.