## WICHITA VALLEY RY. CO. v. BALDWIN.*
### (No. 10926.)

(Court of Civil Appeals of Texas. Fort Worth.
Feb. 14, 1925. Rehearing Denied
March 21, 1925.)

1. **Carriers ⚖⇒228(5)—Finding that delay in transportation was not caused by strike supported.**

Finding that delay in transportation of shipment of cattle was not shown to be caused by any strike in railroad shops *held* supported by evidence.

2. **Carriers ⚖⇒218(10) — Injuries to cattle shipped held visible or manifest.**

Injuries to cattle shipped *held* visible or manifest within provision of contract for written notice, before cattle are removed from carrier's possession in case of such an injury.

3. **Carriers ⚖⇒218(3)—Provision of contract for notice of manifest injury before live stock removed from carrier's possession void in interstate shipment.**

Provision of contract of shipment of live stock for written notice to carrier, before removal of the stock from carrier's possession, of any visible or manifest injury, is invalid, in case of interstate shipment, under provision of Act Cong. March 4, 1915 (U. S. Comp. St. § 8604a), and amendment Act Cong. Feb. 28, 1920 (U. S. Comp. St. Ann. Supp. 1923, § 8604a), prohibiting a carrier from providing a shorter time than 90 days for giving notice of claims.

Appeal from Haskell County Court; R. E. Kee, Judge.

Action by J. L. Baldwin against the Wichita Valley Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Ratliff & Ratliff, of Haskell, and Thompson, Barwise, Wharton & Hiner, of Fort Worth, for appellant.

Murchison & Davis, of Haskell, and Theodore Mack, of Fort Worth, for appellee.

BUCK, J. Plaintiff below, J. L. Baldwin, filed suit February 8, 1923, against the Wichita Valley Railway Company, for damages arising out of an alleged unreasonable and negligent delay in transporting 315 head of cattle, consisting of 248 head of calves and the others heifers and cows, and perhaps 4 bulls, from Haskell, Tex., to Kansas City, Mo. He did not specially allege that there were any bulls in the shipment, though as separately pleaded the number of cattle lacked 4 of being the total of 315, as formerly alleged, and plaintiff in his testimony said there were probably some bulls. Plaintiff alleged that he delivered the cattle to defendant on the 13th day of October, 1922, and that, if the carrier had used ordinary care and diligence in the transportation of said cattle, the shipment would have arrived at the point of destination not later than 12 o'clock on the 15th day of October, the same being the usual and ordinary time of transportation between said points, and if the said carrier and its agents and connecting carriers had used such care and diligence as was its duty to use, said cattle would have arrived at their destination free from any serious injury, and would have been sold on the market of October 16th. He alleged that the cattle were delivered at Kansas City on the morning of October 17th, and by reason of the negligence of the initial carrier and its connecting carriers the cattle were "skinned, bruised, shrunken in flesh, haggard in appearance, and depreciated in market value to the extent of $3 per head."

The defendant answered by way of a general demurrer, certain special exceptions, and specially pleaded that the shipment was an interstate shipment, and that as such it was governed and controlled by the rules prescribed by the Interstate Commerce Commission under the terms and provisions of the Interstate Commerce Act of February 4, 1887 (U. S. Comp. St. § 8563 et seq.) and its amendments, governing interstate commerce, and that the contract of shipment between the plaintiff and the defendant provided that:

"Section 1. (a) Except in the case of its negligence proximately contributing thereto, no carrier or party in possession of all or any of the live stock herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, quarantine, the authority of law, the inherent vice, weakness, or natural propensity of the animal, or the act or default of the shipper or owner, or the agent of either, or by riots, strikes, stoppage of labor, or threatened violence."

The defendant further alleged that during the time in which this shipment occurred there was in force what was then known and is now known as "the shop craft strike," or a strike of the workmen employed in the shops of the railroads, whose duty it was to keep in repair and in operating condition the engines and rolling stock of this defendant and its connecting carriers, and that it was by reason of this strike and the failure of the carriers to secure enough skilled workmen to keep their engines and cars in good repair, although they exercised the greatest diligence in the effort to do so, that any delay occurred. It was further alleged that the contract of shipment provided that, if any person should accompany the live stock in charge of the same, he should take care of, feed, and water them while being transported, whether delayed in transit or otherwise, and that he should see that the cars were closed and fastened, so as to prevent the escape of the live stock, and spe-

---

⚖⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

cially pleaded that, if any neglect with reference to the feeding and caring for said stock while in transit occurred, it was due to contributory negligence of the plaintiff. The defendant further alleged that said contract provided as follows:

"Sec. 4. (c) Before the live stock is removed from the possession of the carrier or mingled with other live stock, the shipper, owner, consignee, or agent thereof, shall inform in writing the delivering carrier of any visible or manifest injury to the live stock."

That under this provision it was the duty of the shipper or caretaker, on the arrival at destination, to notify in writing the delivering carrier of any visible or manifest injury to the live stock, but that the shipper or caretaker wholly failed and refused to do so before removing the live stock from the possession of the delivering carrier, and mingled the same with other live stock, although there was an agent of the delivering carrier at the point of destination, where notice was to be given in writing of said visible or manifest injury, in the person of C. O. Heller, Live Stock Exchange Building, Kansas City, Mo.

Other defenses were pleaded, which will be noticed, if necessary, in the course of this opinion. The cause was submitted to the jury on special issues, and the jury found from a preponderance of the evidence that (1) the defendant and its connecting carriers were negligent in the time taken in transporting the cattle of the plaintiff from Haskell, Tex., to Kansas City, Mo.; (2) that defendant and its connecting carriers, their agents and employés, were negligent in handling the train upon which plaintiff's cattle were shipped; (3) that plaintiff's cattle were damaged by such negligence, either by delay in the time of shipment, or in the manner of handling the same, or both, as alleged by plaintiff; (4) that such damages amount to $750.

The trial court specially charged the jury, at the request of defendant, that a common carrier is not an insurer of live stock received by it for transportation, but is only responsible to the plaintiff for injuries, if any, which may have been occasioned by its own negligence, or the negligence of its connecting carriers, in the transportation of said stock; that the defendant was not liable for rough handling, if any, received by the cattle in question, unless the jury found from a preponderance of the evidence that the defendant or its connecting carriers were negligent in the handling of said stock and the transportation of the same; that the defendant was not liable in law for damages to plaintiff's cattle, if the damages resulted necessarily in the course of the transportation from ordinary handling by the defendant and its connecting carriers, such as ordinary switching and confinement in cars.

The court further submitted to the jury an issue as to whether there was a strike or stoppage of labor in progress upon the line of defendant and its connecting carriers, extending from Haskell, Tex., to Kansas City, Mo., and the jury found that there was a strike between Haskell, Tex., and Wichita Falls, Tex., but from the evidence produced there was none to show there was a strike beyond Wichita Falls.

The jury further found in answer to the submission of an issue requested by defendant that the shipment of cattle involved in this case was under and by virtue of the terms of a written contract. The jury further found, in response to an issue submitted by the defendant, that the plaintiff at the time of the arrival of the cattle in Kansas City did not inform the delivering carrier in writing of any visible or manifest injury to said cattle before the same were removed from the possession of said delivering carrier, or mingled with other live stock. The jury further found that the delay was not caused by a strike or stoppage of labor. The evidence shows that upon arrival of the cattle the plaintiff, who accompanied the shipment, saw the cattle before they were delivered, or as they were being delivered, to the receiving pens at Kansas City.

Under its second proposition, the appellant urges that a peremptory instruction should have been given, or at least the verdict of the jury in answer to the interrogatory propounded to the jury as to the existence of a strike or a stoppage of labor in progress upon the line of defendant's railway and its connecting carriers, during the time when the shipment was being transported from Haskell to Kansas City, should have been set aside for lack of evidence to support it. It will be remembered that the jury answered this interrogatory as follows:

"By evidence produced there was a strike between Haskell, Tex., and Wichita Falls, Tex., but from evidence produced there was none to show there was a strike beyond Wichita Falls."

C. C. Brown, witness for the defendant, testified that he was a telegrapher at Haskell for the defendant company, and held that position in October, 1922; that it was his duty to fill out shipping contracts covering live stock shipments; that he knew the plaintiff, and that the plaintiff entered into a contract with the defendant company and signed the contract; that contracts are usually filled out just before departure of the cattle; that he made two copies at a time, the original and the duplicate, and that the copy shown him and held by the railway company was a carbon copy; that he would not say when the writing, "Subject to delay on account of labor troubles," was written in the contract; that he did not know whether or not said writing was in the contract at the time plain-

tiff signed it; that he could not explain why this stipulation was in the carbon copy, and not in the original; that the stipulation in the carbon copy was in his handwriting, and that the stipulation was not at the time of the trial in the original copy. The plaintiff testified that "there was never any notation on here," evidently meaning that the writing shown on the carbon copy was not on the original.

But, inasmuch as the printed terms in small type did say that, "except in the case of its negligence contributing thereto, no carrier or party in possession of all or any of the live stock herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, quarantine, the authority of law, the inherent vice, weakness, or natural propensity of the animal, * * * or by riots, strikes, stoppage of labor, or threatened violence," it may be said that it is immaterial as to whether the writing above noted, inserted in the carbon copy, was in the original copy signed by the plaintiff or not.

W. F. Long, witness for defendant, testified that he was a traveling engineer for the Fort Worth & Denver City Railway Company; that a strike was in effect on the railroads extending from Haskell to Kansas City in October, 1922; it was known as "the Federated Shop Crafts strike"; that the Missouri, Kansas & Texas Railway Company was involved; that the strike was in effect on October 13 to 17, inclusive, and affected the mechanical department; that the car men were out, as well as the machinists; that the strike reached its worst from along about the 1st of November, 1922, or maybe about the middle of November; that "our power" was in such condition that the two railroads represented by him did not feel the effect of the strike as to crippling the railroads' business in transporting freight and live stock until about the second month of the strike; that they had trouble in October; that it was a part of his duties to make an effort to supply employés to take the places of strikers, and that he had men in Fort Worth, Denver, Houston, and Kansas City trying to get labor. He further testified that he knew personally of the strike conditions on the two lines of railway for which he was working, but testified as to conditions on other lines of railway, including the Missouri, Kansas & Texas Railway from Wichita Falls to Kansas City, largely from hearsay and talking with the officials of the other railways; that his knowledge of conditions on the "Katy" was from observation; he saw officials doing the strikers' work at Wichita Falls; that by virtue of his employment as a railroad man he knew there was a strike among the employés of the Fort Worth & Denver City Railway and the Missouri, Kansas & Texas Railway from Wichita Falls to St. Louis; that the strike covered all of the United States, though he did not travel out of Texas.

[1] Other witnesses testified for defendant, including conductors on the defendant's line and on the Missouri, Kansas & Texas Company's line from Wichita Falls to Kansas City, and none of them testified anything as to the existence of a strike. We are of the opinion that under this condition of facts we ought not to disturb the findings of the jury to the effect that the evidence does not show that there was a strike beyond Wichita Falls, or between Wichita Falls and Kansas City, or at least that the strike interfered with the movement of trains and proximately caused the delay which plaintiff's testimony showed occurred between Wichita Falls and Kansas City.

In P. & S. F. Ry. Co. v. Thompson, 235 S. W. 915, application for writ of error dismissed for want of jurisdiction by the Supreme Court, the Amarillo Court of Civil Appeals held that a railway company was required to exercise ordinary care and diligence to supply substitutes for striking employés, or at least it was a question for the jury. There was no effort in the instant case on the part of defendant to show that the delay complained of was caused by a strike or stoppage of labor.

The evidence shows that the cattle were loaded in Haskell about 9 o'clock a. m. on October 13th, and reached their destination early in the morning of October 17th. The testimony of plaintiff was that the usual and customary time for making the trip is about 60 hours, or 2½ days; that he had made the trip a number of times, and knew what the usual and customary time required was. Plaintiff alleged that on the arrival of the cattle, and when finally delivered at the point of destination, they were "skinned, bruised, shrunken in flesh, haggard in appearance, and depreciated in market value to the extent of $3 per head." Plaintiff admitted that, although he saw his cattle as they were being placed in the stock pens at Kansas City, he did not notify in writing the agent of the delivering carrier that his cattle were skinned, bruised, etc.

[2] Appellee urges that there is no evidence that the injuries to the cattle of which plaintiff complains in this suit were visible or manifest, but we do not think that such a contention should be sustained. The very description of the injuries show that they were visible and manifest, and that thereby, in part, at least, the cattle were depreciated in market value. The appellant urges that by reason of the failure to give notice to the delivering carrier of such injuries, or claimed injuries, the plaintiff has forfeited his right of action, and that he should not now be allowed to maintain it. It has been held that a provision of this kind is a reasonable one,

and is for the purpose of preventing fraud in the presentation of ungrounded claims of loss or injury to the stock. See Northern Pacific Ry. Co. v. Wall, 241 U. S. 87, 36 S. Ct. 493, 60 L. Ed. 905; Wabash Ry. Co. v. Thomas, 222 Ill. 337, 78 N. E. 777, 7 L. R. A. (N. S.) 1041; P. & S. F. Ry. Co. v. Bell (Tex. Civ. App.) 189 S. W. 1097; C. R. I. & G. Ry. Co. v. Whaley (Tex. Civ. App.) 190 S. W. 833; M. N. Ry. Co. v. Williams (Tex. Civ. App.) 208 S. W. 712, affirmed by the Supreme Court in 229 S. W. 476.

[3] Unless the provision referred to should be held to be invalid and unlawful by reason of a federal statute, hereinafter to be discussed, we would be inclined to hold that, inasmuch as the evidence shows that plaintiff did not inform, in writing or otherwise, the delivering carrier of the alleged injuries to his cattle, the trial court should have given a peremptory instruction for the defendant.

By Act March 4, 1915, 1916 Supplement to Federal Statutes, pp. 124, 125 (U. S. Comp. St. § 8604a), Congress passed a law with reference to interstate commerce, in which it was provided that:

"It shall be unlawful for any such common carrier to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of claims than ninety days and for the filing of claims for a shorter period than four months, and for the institution of suits than two years: Provided, however, that if the loss, damage, or injury complained of was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery."

This provision is found in a further amendment in the Act of February 28, 1920 (U. S. Comp. St. Ann. Supp. 1923, § 8604a). In Cunningham v. Railway Co., 219 S. W. 1003, the Springfield Court of Civil Appeals of Missouri held that the provision of the act of 1915 did not apply in the case before the court, in that the plaintiff did not base his claim on delay or damage while his stock was being loaded and unloaded, or on damage in transit by carelessness or negligence.

In Missouri Pac. Ry. Co. v. Martindale, 139 Ark. 143, 213 S. W. 777, the Supreme Court of Arkansas held that the federal statute, limiting carriers in interstate shipments from contracting with shippers for notice of claims of amount of loss, damage, or injury to subject-matter of shipment, applies to and prohibits any provision in the contract of shipment requiring the shipper to give written notice of the loss or injury, if any, in time to have examined the cattle before they were mixed with other cattle, etc. The court says:

"Our interpretation of this amendment is that it prevents the carriers on interstate shipments from contracting with shippers for notice of claims on account of loss, damage, or injury to the subject-matter of the shipment in a shorter time than 90 days, or for filing claims in a shorter period than 4 months, or for the institution of suits on claims for a shorter period than 2 years. The language is plain and unambiguous. The object and purpose of the act was to protect shippers against the short time for giving notices of claims on account of loss, damage, or injury to the subject of shipment imposed by carriers on them in bills of lading or contracts of shipment. Appellant, however, seeks to uphold the contract clause in the instant case, because it applies to a notice regarding loss or injury, and not to a notice of claim. In other words, it is asserted that the Cummins Amendment only prevents carriers from contracting for a notice of the claim in a shorter period than 90 days, and does not affect their right to contract for a notice regarding loss or injury. The claim must necessarily be founded upon the loss or injury, and the word 'claim,' used in the amendment, is broad enough to cover loss or injury. Any other construction would deprive the shipper of the protection intended by the act. We can see no good reason for preventing a carrier from contracting for a notice of claim in a shorter period than 90 days, and permitting it to contract for notice of loss or injury when the shipment reaches its destination. We do not think the statute intended such a distinction."

In Hunt v. Hines, Director General of Railroads, 204 Mo. App. 318, 223 S. W. 798, the Kansas City Court of Civil Appeals held that, by the last proviso of the federal statute above noted, Congress evidently concluded that losses for the causes therein stated would be sufficiently known to the carrier to start it upon investigation and put it upon inquiry without the formality of a notice from the shipper. In Mason v. Maine Cent. Ry. Co., 119 Me. 195, 110 A. 425, the Supreme Court of Maine held that by reason of the federal statute above quoted the rights of plaintiff to maintain his suit were not cut off, where the plaintiff had filed his notice of claim within 4 months after the injury to the property.

If the Supreme Court of Arkansas in Railway Co. v. Martindale, supra, and the Supreme Court of Maine in the last-cited case are correct, and we are not disinclined to follow them, in the absence of other reliable authorities to the contrary, the plaintiff did not forfeit his right to recovery by a failure to give notice of the injury to his cattle before they were removed from the cars and mixed up with other cattle. Therefore we overrule the first assignment directed to this question.

We have carefully considered appellant's other assignments of error, in the main directed to the lack of evidence to sustain certain findings of the jury, but we do not believe that they should be sustained. The evidence shows that, even after the train reached Wichita Falls, there were a number of stops and delays. The conductors who testified stated that some of these delays were caused by necessity for repairs, but

there is no evidence by any one present during the transportation to the effect that the delays were reasonably necessary, or that they were caused by any strike.

We are of the opinion that the judgment below should be affirmed; and it is so ordered.