**M. E. MARBURGER, Appellant,**

v.

**M. T. RAMSEY, Appellee.**

No. 3989.

Court of Civil Appeals of Texas.

Eastland.

Nov. 19, 1965.

Rehearing Denied Jan. 14, 1966.

Wade, Davis, Callaway & Marshall, Clyde Marshall, Jr., Ft. Worth, for appellant.

Crutchfield & Rhodes, A. L. Rhodes, Abilene, for appellee.

WALTER, Justice.

Dr. M. T. Ramsey filed suit against M. E. Marburger on a promissory note dated July 12, 1961, in the amount of $6,682.56. Based on a verdict, judgment was rendered for Ramsey against Marburger. Marburger has appealed and presents fifty-one

points of error. The parties will be designated as they were in the trial court. The parties had been partners in the ranching business for a number of years prior to this law suit.

Defendant pleaded failure of consideration and that the note was signed and delivered with the understanding that it would have no force or effect until Ramsey rendered a complete accounting of the partnership operations to Marburger; that the note was executed under a mistake of fact relative to payment of $3,000.00; that the note was blank as to the due date and that Ramsey inserted the due date after it was signed. The defendant further pleaded that the parties entered into a partnership cattle venture in 1947, which continued until on or about October 1, 1959 at which time it was dissolved by mutual consent; that in 1950 Ramsey fraudulently induced him to execute and deliver two promissory notes in the amount of approximately $11,000.00, representing to the defendant that the books showed that he was indebted to him in such amount and promising him that if he would execute the notes that he, (Ramsey), would deliver to him records to substantiate such indebtedness; that such representations were false and were made to induce defendant to execute the two notes. The defendant further alleged that in 1952, after making the two original notes that the plaintiff and the defendant verbally agreed that Marburger would be entitled to a salary of $200.00 per month from the partnership; that the note sued upon by plaintiff was given in replacement of a note for a like amount dated the 1st day of October, 1959; that such note of October 1, 1959, was given by defendant to plaintiff in connection with the dissolution of the partnership and in replacement of the notes of the early 1950's so that the fraud, invalidity and want of consideration for such original two notes was carried forward into the note sued upon; that in connection with the execution of the note sued upon Ramsey induced defendant to sign the same upon the false and fraudulent representations, then and there

made, that the two notes executed in the early 1950's were still outstanding and unpaid; that payment thereof had not been accomplished by credits due defendant in the partnership operations, that such two original notes were valid debts due by Marburger to Ramsey, and that plaintiff thought that with adjustment of all partnership accounts, taking into consideration the assets set aside to the respective parties and all credits due M. E. Marburger, said defendant would still owe plaintiff $6,682.56 on such original two notes, but that if defendant would sign a note in said amount, plaintiff would merely hold it as a memorandum of his estimate of the sum due him upon dissolution of the partnership until he should render defendant a full and complete accounting of all partnership operations and afford them an opportunity to inspect and audit the partnership accounts and records, and until such time as adjustments thereby necessitated had been made said note would have no force or effect; that defendant relied upon all of such representations in signing the note of October 1, 1959.

The special issues submitted to the jury and the jury's answers thereto are as follows:

"SPECIAL ISSUE NO. 1: Do you find from a preponderance of the evidence that plaintiff Ramsey and Defendant Marburger agreed that the notes sued upon would have no force and effect between them until plaintiff Ramsey had rendered a complete accounting of the partnership operations to Marburger?—No.

SPECIAL ISSUE NO. 2: Do you find from the preponderance of the evidence that the plaintiff Ramsey promised defendant Marburger that he (Ramsey) would deliver an accounting to defendant of the operations of Ramsey and Marburger as a partnership?—Yes.

SPECIAL ISSUE NO. 3: Do you find from a preponderance of the evidence

that defendant Marburger relied upon plaintiff Ramsey's promise to render an accounting, when he executed the note sued upon?—No.

SPECIAL ISSUE NO. 4: Do you find from the preponderance of the evidence that the promise of plaintiff Ramsey, to render a subsequent accounting was a material inducement to the defendants in signing the notes sued upon?—No.

SPECIAL ISSUE NO. 5: Do you find from the preponderance of the evidence that plaintiff Ramsey has failed to render an accounting of all of the operations of the partnership of Ramsey, Marburger?—No.

SPECIAL ISSUE NO. 6: Do you find from a preponderance of the evidence that the plaintiff Ramsey and defendant Marburger, agreed that the note sued upon would be adjusted in accordance with an accounting of partnership operations to be there after rendered by plaintiff Ramsey?—No.

SPECIAL ISSUE NO. 7: Do you find from the preponderance of the evidence that the plaintiff Ramsey and defendant Marburger agreed that the note dated October, 1, 1959 would be adjusted in accordance with an accounting to be thereafter rendered by plaintiff Ramsey?—Yes.

SPECIAL ISSUE NO. 8: Do you find from a preponderance of the evidence that at the time of the execution of the note sued upon, both the plaintiff, Ramsey, and defendant, Marburger, were laboring under a mutual mistake of fact as to the correctness of the partnership books and records?—No.

SPECIAL ISSUE NO. 9: Do you find from a preponderance of the evidence that the principal amount recited in the note sued upon is incorrect as a statement of the amount owing by the defendant, Marburger, to plaintiff upon

dissolution of the partnership because of a failure to reflect a $3000.00 credit for payment on a note by defendant, Marburger?—No.

SPECIAL ISSUE NO. 10: Do you find from a preponderance of the evidence that the note sued upon by plaintiff was blank as to the due date, at the time, the defendants signed the same?—No.

SPECIAL ISSUE NO. 11: Do you find from a preponderance of the evidence that the defendant Ramsey inserted a due date without the consent of defendant after the execution of the note sued upon?—No."

Horace Condley testified substantially as follows:

I am a Certified Public Accountant. I have been practicing public accounting since about 1922. From 1947 to 1959 I kept the partnership accounting records for the partnership of Dr. M. T. Ramsey and M. E. Marburger. From 1947 to 1959 I consulted with Dr. Ramsey regarding the business of the partnership. I also consulted with Mr. Marburger. I prepared the partnership tax returns. I sent the partners an accounting of the partnership business at the end of each year which was a copy of the partnership tax return. The tax return reflects income and expenses and reflects the business of the partnership during the year in a summary form. Mr. Marburger never requested a report from me that I didn't give him so far as I can remember. I talked to his accountant on the telephone on occasions and answered specific questions. I prepared the final analysis of the dissolution of the partnership. I mailed Mr. Marburger a copy of it.

"Q Would you explain to the jury how this analysis was arrived at and how the final figure of Six Thousand and some odd dollars was arrived at? You may refer to your books and records if you need to.

A. Well, I can tell you in a general way,

without referring to them. We took the capital accounts at the time they agreed to liquidate the partnership and we charged each partner with the things that they were going to keep out of the partnership assets. For instance the cattle and the implements, were divided and were charged to one or the other of the partners, in the final partnership distribution."

Dr. Ramsey testified substantially as follows:

Plaintiff's exhibit number 1 is a note dated July 12, 1961 in the amount of $6,682.56, signed by M. E. Marburger in my presence. Nothing has been paid on this note. This note was given in renewal of another note dated October 1, 1959 for $6,682.56. The 1959 note has a notation on it "Interest paid and Principal Renewed." The note represents the amount due me on dissolution of the Ramsey-Marburger partnership. Marburger and I formed a partnership in 1947. Our books were kept by Horace Condley, a Certified Public Accountant. Marburger and I both wrote checks on our account. I spent some of my weekends at the ranch. During harvest season I would spend a week or ten days out of my office at the ranch. Neither of us drew a salary. In arriving at the amount of the note on dissolution of our partnership, we used the figures given us by our accountant. The books of the partnership were always available to Marburger as Mr. Condley was his Certified Public Accountant the same as he was mine. Marburger agreed on him when we employed him.

M. E. Marburger testified substantially as follows: I live at Chico, Texas and have been in the ranching business since 1939. Dr. Ramsey and I formed a partnership in 1947. My job was to do the buying and selling and look after the cattle. Dr. Ramsey was to look after the business end of the partnership. In 1952, we had an agreement that I would draw a salary of $200.00 per month. I was never paid a salary. "I just told him, at the time, he had this note

and stuff that he claimed that I owed him, that whenever we settle the partnership that we would settle it then." I have been in Mr. Condley's office and looked at some of our records but I don't know anything about the books. I remember signing the note which is the basis of this suit. The note was mailed to me and I signed it and returned it and my other notes were mailed to me by Dr. Ramsey. I never did ask Mr. Condley for an accounting. I knew where the books were kept and I knew Mr. Condley was keeping the books for the partnership. I have never checked our records. Mr. Marburger was asked the following questions and gave the following answers:

"Q. by Mr. Marshall: Well, what, if anything, did Doctor Ramsey tell you, he would do on the note, if your checking showed any errors; checking the books and records?

A. Clyde, I don't believe that we discussed that at the time, because we were—

Q. Were you relying upon any errors being corrected in the adjustment figure between you and him, as partners, when you signed those notes?

A. I was sure there had to be some.

Q. Well, what did Doctor Ramsey tell you in that regard?

A. I don't remember. * * *

Q. Let me ask you another question, Sir. You state in your petition that at the time you signed this renewal note, this note of— that Doctor Ramsey told you if you would sign this note that he would merely hold the same as a memorandum of his estimate of the sum due him?

A. What was that note now?

A. That's the last note that you signed?

A. In 1961?

A. Yes.

Q. Did he state that to you?

A. State that again. I didn't follow you.

Q. He says that Plaintiff said that he would merely hold the same as a memorandum of his investment?

A. No. Not on this last 1961.

Q. He didn't tell you that then?

A. No, sir. If I did, I made a wrong statement. Back when he first signed the notes, he told me that. No. He was collecting his interest on that. That had all changed.

Q. So, he didn't tell you that?

A. Not on this last note. Certainly he didn't. * * *

Q. Are you still saying, according to your petition that he fraudulently induced you to do certain things; are you still saying he fraudulently induced you to sign anything?

A. Well, yes. That's the way it is.

Q. You are still saying it?

A. You bet.

Q. On what basis now; Please state what basis?

A. Because I didn't know anything about what was going on.

Q. And that's the reason you say he fraudulently induced you because you didn't know?

A. I certainly didn't know anything about that kind of business. All I knew was to work.

Q. Would you have known anything about it if you had read the—

A. I don't think I could have told a lot about it.

Q. And because you are ignorant you say he defrauded you, is that correct?

A. Whose ignorance?

Q. Yours?

A. Maybe it was my ignorance."

■ Appellant's points relating to alleged misconduct of the trial court in the presence of the jury cannot be sustained because the court instructed the jury not to consider anything he said. In Walker v. Texas Employers' Insurance Association, 155 Tex. 617, 291 S.W.2d 298, the court said: "Moreover, the jury must be presumed to have obeyed the instruction of the trial court and to have disregarded the statement of the witness."

■ We find that the foregoing testimony and other facts and circumstances in evidence constitute some evidence of probative value and supports the judgment.

We have considered all the evidence and have concluded that the answers of the jury and the judgment are not against the weight and preponderance of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W. 2d 660.

The defendant has not discharged his burden of showing that the court abused its discretion in overruling his second motion for a continuance.

■ Defendant sought, by trial amendment, to plead that the bookkeeper made a mistake and reported a note payment in the years 1953 and 1954, thus, charging the partnership with income for the same item in two different years. Ramsey discovered this error and filed an amended return for himself. Defendant contends that the time for amending his income tax return has expired and any recovery for such error is now barred by limitations. Defendant contends that he failed to file an amended return before limitations became operative and he paid $2500.00 more in income taxes than he was obligated to pay and he, therefore, contends he is entitled to a judgment for said sum against Ramsey, or, in the alternative, a credit for such amount. We find no merit in defendant's contention that the court erred in refusing him permission to file said trial amendment. " * * * it is well settled that after an-

nouncement of ready the granting of leave to amend is ordinarily within the discretion of the court, this discretion being so exercised as to attain the ends of justice." 46 Tex.Jur.2d page 26.

 Defendant's points contending the court erred in depriving him of his defenses relative to salary and profits from a horse deal alleged to be due him by the partnership are without merit. Defendant testified that he had never drawn a salary and said "I just told him, at the time he had this note and stuff that he claimed that I owed him, that whenever we settled the partnership that we would settle it then."

The record shows without dispute that the partnership was dissolved by mutual agreement on or about October 1, 1959. On that date defendant executed a note to Ramsey for $6682.56, and renewed it on July 12, 1961 for the same amount after paying the interest on the first note. The evidence discloses that the matters pleaded by the defendant as defenses were known to him at the time. In Gaylord Container Division of Crown Zellerbach Corporation v. H. Rouw Company, 392 S.W.2d 118 (Tex. Sup.Ct.), the court quoted with approval Hunter v. Lanius, 82 Tex. 677, 18 S.W. 201, as follows:

"Where one executes an obligation in renewal of a note claimed by the holder to be valid, but known to the maker to be fraudulent or without consideration, the latter will be deemed to have freed the transaction of the fraud, and to have waived the want of consideration, and will not be permitted to plead it."

We hold that the court submitted all of the ultimate issues made by the pleadings and raised by the evidence.

We have considered all of defendant's points and find no merit in them. They are overruled.

The judgment is affirmed.