TANENBAUM TEXTILE CO., Inc.,
Appellant,

v.

Joseph SIDRAN, Appellee.

No. 16995.

Court of Civil Appeals of Texas.

Dallas.

Dec. 22, 1967.

Rehearing Denied Feb. 2, 1968.

G. H. Kelsoe, Jr., Kelsoe & Stone, Dallas, for appellant.

Harold B. Berman and Emil Corenbleth, Dallas, for appellee.

BATEMAN, Justice.

Involved here is the question of liability of a manufacturer for sales commissions. Alleging an oral contract made in appellant's New York office, the appellee sued and obtained a judgment based on a jury verdict.

The jury found in answer to Special Issue No. 1 that on or about January 24, 1962 appellant agreed to pay appellee "a commission for producing a sale of piece goods for defendant [appellant] of 1 per cent of the sale price of said merchandise." In response to the next five special issues, which were submitted conditionally upon an affirmative answer to No. 1, the jury found that appellee produced sales for appellant as follows:

(2) To J. B. Mfg. Co., San Antonio, Texas, 844,000 yards of cotton shirting at $0.4613.

(3) To J. M. Wood Mfg. Co., Waco, Texas, 1,400,000 yards of cotton sheeting at $0.46.

(4) To Iberia Mfg. Co., Iberia, Mo., 735,000 yards of Taupe Rubber at $0.79.

(5) To Gillsam Mfg. Co., Dublin, Texas, 78,000 yards of Green Rubber Material at $0.835.

(6) To Bonham Mfg. Co., Bonham, Texas, 175,000 yards of Marine Rubber Material at $0.845.

In response to Special Issue No. 7 the jury found that appellant agreed to pay appellee a commission of 1 cent per yard on Marine Rubber Material furnished Iberia Mfg. Co. on subcontract to Brownwood Mfg. Co., Brownwood, Texas, for services of appellee in producing such sale for appellant. The jury then found, in answer to Special Issue No. 8, that appellee produced a sale for appellant to Iberia Mfg. Co. of 270,599 yards of Marine Rubber Material pursuant to the agreement inquired about in Special Issue No. 7.

Judgment was rendered for appellee on this verdict, and appellant asserts fifteen points of error on appeal.

By its first and fifteenth points appellant complains of the trial court's refusal to permit the filing of its first amended original answer. Appellant was first represented by certain attorneys who filed an original answer consisting only of a general denial. They later withdrew and sent their file on the case to their successors, who tried the case for appellant and are its attorneys of record on this appeal. In the file was an office copy of an amended answer specifically alleging as defenses the New York and Texas Statutes of Frauds, and another New York statute. At the end of the pleading was a certificate that a copy had been sent to appellee's counsel, from which appellant's trial counsel assumed, without further investigation, that the amended answer had been filed and a copy furnished to appellee's counsel. Appellant's trial counsel did not discover that the amended answer had not been filed until after the close of the evidence. He then filed a motion for leave to file the

amended answer, whereupon appellee's counsel expressed surprise and requested leave to withdraw his announcement of ready. The court refused the same and also refused to permit the filing of the amended answer. Appellant's counsel had made no effort to prove the New York statutes alleged in the amended answer and at no time moved the court, pursuant to Rule 184a, Vernon's Texas Rules of Civil Procedure, to take judicial notice thereof. The pleadings were not read to the jury, and in orally stating appellant's position the attorney did not mention these New York and Texas statutes. When the court refused leave to file the amended answer appellant did not request leave to withdraw its announcement of ready and did not request a continuance or postponement.

■ The law invests the trial court with broad discretion in such matters, and its ruling will not be disturbed on appeal unless abuse of such discretion be shown. Marburger v. Ramsey, 398 S.W.2d 379 (Tex.Civ.App., Eastland 1965, writ ref'd n. r. e.); 46 Tex.Jur.2d, Pleading, p. 26, § 207. We see no such abuse here.

■ Moreover, we think appellant waived its right to complain of the court's refusal by not requesting either a continuance or a mistrial, but electing to speculate on the result of the verdict. Colls v. Price's Creameries, Inc., 244 S.W.2d 900 (Tex.Civ. App., El Paso 1951, writ ref'd n. r. e.); Burnett v. Rutledge, 284 S.W.2d 944, 947 (Tex.Civ.App., Amarillo 1955, writ ref'd n. r. e.).

Appellant's first and fifteenth points of error are overruled.

By its second point of error appellant challenges the oral contract sued on as not being sufficiently definite to be enforceable. The jury found, in answer to Special Issue No. 1, that the parties had agreed that appellant would pay appellee "a commission for producing a sale of piece goods for defendant of 1 per cent of the sale price of said merchandise." The phrase-ology of the issue coincides with appellee's pleading and, as will hereinafter be shown, there was competent evidence of probative force to support it.

Appellant says the agreement so found by the jury is too indefinite to be enforceable in that: (1) its duration is not specified and (2) the time and place of payment are not specified. We do not agree with appellant.

■ Where a contract is silent as to the time it is to run, or provides that it is to run for an indefinite term, it is not invalid for that reason but may be terminated by either party at any time. Byrd v. Crazy Water Co., 140 S.W.2d 334 (Tex.Civ.App., Dallas 1940, no writ); Island Lake Oil Co. v. Hewitt, 244 S.W. 193 (Tex.Civ.App., Beaumont 1922 writ dism'd); 17 Am.Jur.2d, Contracts, § 486, pp. 956, 957. Such a contract is not too indefinite to be enforced, because in such circumstances the law will imply that a reasonable time is meant. Davis v. Davis, 44 S.W.2d 447, 450 (Tex. Civ.App., Texarkana 1931, no writ); Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S.W. 1101, 1106 (1923); 13 Tex.Jur.2d, Contracts, § 103, p. 256; 17 Am.Jur.2d, Contracts, § 486, p. 956. "The determination that an agreement is sufficiently definite is favored." 17 Am. Jur.2d, Contracts, § 75, p. 414, citing Portland Gasoline Co. v. Superior Marketing Co., 150 Tex. 533, 243 S.W.2d 823 (1951). This is particularly true where one of the parties has performed his part of the contract. 17 Am.Jur.2d, Contracts, § 75, p. 415; Id. § 78, p. 418, and § 80, p. 420.

■ A manufacturing company which has agreed to pay a salesman a commission on all sales produced by him may not, after accepting the benefits of the salesman's activities, escape liability for the commissions by contending that the contract is void and unenforceable because it did not specify the time of its duration or because of its failure to specify the time and place of payment of the commissions. The law implies that a reasonable time was in-

tended by the parties, and in the absence of a provision designating the place of payment the law makes the place of payment the domicile of the payor. Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S.W. 1101, 1106–1107 (1923); Zihlman v. Fleetwood, 2 S.W.2d 881, 883 (Tex.Civ.App., El Paso 1928, no writ); 13 Tex.Jur.2d, Contracts, § 298, p. 545.

For these reasons the second point of error is overruled.

The court submitted separate special issues inquiring whether appellee had produced the six sales alleged in his petition. All were answered in the affirmative. Appellant had requested the submission of six special issues inquiring, with respect to each such sale, whether appellant was paid for the merchandise sold. Appellant argues under its third point of error that the refusal of these issues was reversible error because under the oral contract sued on appellee would not be entitled to a commission on a sale until appellant received payment for the goods. Appellee on cross-examination first testified that under the agreement he was entitled to his commission regardless of whether appellant got paid; then later admitted that in his oral deposition before trial he had testified: "I would earn my commission on the sales that would be made, when the merchandise was paid for."

■ However, in submitting Special Issue No. 1 the court merely inquired whether appellant agreed to pay appellee "a commission for producing a sale of piece goods for defendant of 1 per cent of the sale price of said merchandise," with no mention of the matter of payment to appellant for the merchandise. Appellant did not object to the issue on the ground that this important element was omitted; and it did not request the submission of an issue on whether it was in fact an element of the agreement. Unless and until there was first a finding that it was an element, the six requested special issues would be immaterial. Therefore, there was no error in

refusing to submit them, and the third point of error is overruled.

■ Under its points of error four and five appellant urges that it was error to submit Special Issue No. 1 since the oral contract inquired about would be in violation of the New York and Texas Statutes of Frauds. These defenses were not affirmatively set forth in the answer, and no objection was made to appellee's evidence of the contract on this ground at the time it was offered. Therefore, the matter was not before the court and the defenses were not entitled to consideration in submitting the case to the jury. Rule 94, T.R.C.P.; Cook v. Hamer, 158 Tex. 164, 309 S.W.2d 54 (1958); Cessac v. Leger, 214 S.W.2d 860 (Tex.Civ.App., Beaumont 1948, writ ref'd n. r. e.); Pams Advertising Agency, Inc. v. Hartley, 357 S.W.2d 764 (Tex.Civ.App., Waco 1962, no writ). The fourth and fifth points are overruled.

By its sixth point of error appellant says the trial court erred in submitting Special Issue No. 1 because appellee "as a matter of law failed to meet the burden of proof required of him." Of course, if the issue is one raised by the evidence (and we hold that this issue was so raised), then it is the function of the jury to determine whether the burden of proof was met. The issue was so phrased as to put appellee under that burden, and the affirmative answer of the jury determines that the burden was met. The sixth point of error is overruled.

■ By its next two points of error appellant presents: (7) that there was no evidence to support the finding of the jury in answer to Special Issue No. 1, and (8) that such finding is against the great weight and preponderance of the evidence. We have carefully studied the entire statement of facts and are of the opinion that neither point is well taken.

The evidence offered by appellee showed that all of appellant's corporate shares were owned by Lawrence Tanenbaum (its presi-

dent) and his wife and children, and that in January, 1962 appellee met with Tanenbaum in the latter's New York office, no one else being present, when it was orally agreed that appellant would pay to appellee a commission of one per cent "of the dollars and cents' value of any business he takes on through my recommendations or putting him onto it," and that Tanenbaum told one of appellant's employees "of our arrangement and understanding * * * that I was to refer some business to them and on a commission basis." Appellee also testified that he agreed to the arrangement "and started to recommending him some business."

Appellee's testimony was also to the effect that at some later time he was in Tanenbaum's office when one of his, Tanenbaum's, employees came in and handed appellee a check for $1,200 and that when asked what it represented Tanenbaum said, "Oh, that's some of the commissions I owe you." Appellee refused to accept the check because it was for an inadequate amount and not accompanied by a statement showing what it covered. This incident was also related in the testimony of B. L. Krocker, one of appellee's employees.

On cross-examination appellee testified that Tanenbaum told him to go out and get business and that he would be getting the commission; that Tanenbaum told his employees Kornhauser and Stilsky of the arrangement; that appellee talked with Tanenbaum about each of the sales he had negotiated and procured, and that Tanenbaum agreed to pay him a commission on each one of them. He also said that under his agreement he had the duty of soliciting and seeing that the people bought the goods from Tanenbaum, and that if he was of any help to Tanenbaum in getting a contract, and Tanenbaum saw fit "to take over," his commissions were earned, and that all he had to do to earn a commission was to be "helpful."

If we reject all evidence to the contrary and consider only that which tends to support the finding in question, as we must do in considering this "no evidence" point (No. 7), we cannot escape the conclusion that there is evidence of probative value to support the finding. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914); Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114 (1951). Therefore, Point of Error No. 7 is overruled. However, Point No. 8 asserts that the finding is against the great weight and preponderance of the evidence, requiring that we consider and weigh all the evidence in the case. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1952). This we have carefully done and, without unduly expanding this opinion by setting forth the substance of it, let us merely say that the testimony given by appellant's witnesses categorically denied appellee's testimony on the matter. But the jury had a right to and evidently did believe appellee's testimony, and we cannot say that the finding, considering all of the evidence, is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust. In re King's Estate, supra. Therefore, Point of Error No. 8 is also overruled.

By its Points of Error Nos. 9, 10, 11, 12 and 14 appellant challenges the sufficiency of the evidence to support the jury's findings, in response to Special Issues Nos. 2, 4 and 8, that appellee produced a sale for appellant to J. B. Mfg. Co. of San Antonio, Texas and two separate sales to Iberia Mfg. Co. of Iberia, Missouri. Appellee testified that he talked to Bernie Ritchie, the executive head of J. B. Manufacturing Company, then called Tanenbaum, told him of the contact and asked him if he would like to get an order from that company, to which Tanenbaum replied that he was always looking for any good business but that he questioned the credit of this company. When appellee outlined a financing plan that could be used and assure Tanenbaum of payment for the merchandise Tanenbaum replied that if such a plan could be arranged he would be happy for appellee "to follow

through and see that we get the business." He said he then contacted Ritchie again and reported to Tanenbaum that he could prevail on Ritchie to give the business to appellant, and that Tanenbaum instructed him to go ahead with the deal; that he then "finalized the contract" and that appellant got the business.

With respect to the sales to Iberia Manufacturing Company, appellee testified that after he made the contract with Tanenbaum he learned through a telephone call from Mr. Cunningham, president of the Iberia Company, that the company had received a government contract. He told Tanenbaum of this and that although Cunningham had previously bought materials from a competitor of appellant he, appellee, could be instrumental in getting the order for appellant and in getting Cunningham "starting to do business with Tanenbaum Textiles." Tanenbaum replied, "by all means to go ahead and get the business." He then testified that Tanenbaum suggested that he go with Cunningham to the office of Joel Turner, who had been financing Cunningham and supplying him material, and tell him that the materials would not be bought from him, but from Tanenbaum, who would be billing it direct to appellee, "and that for that piece of business Tanenbaum would pay me one penny a yard instead of the one per cent commission"; that this related to the subcontract which Iberia Manufacturing Company had with Brownwood Manufacturing Company, a corporation owned by appellee; that this arrangement was consummated along those lines; that Tanenbaum shipped the merchandise to Brownwood but did not pay appellee his one cent a yard commission. This was the sale inquired about in Special Issue No. 8.

■ Appellee said he met with Cunningham twice, the first time in Tanenbaum's office in New York City, and the second time when he and Tanenbaum visited with Cunningham at the Iberia, Missouri plant; that in the New York conference Tanenbaum told him of a suggestion Cunningham had made for the formation of a corporation to be owned by the three of them and which would be paid a two per cent commission on all business produced for appellant by Cunningham and appellee, instead of appellee's agreed one per cent. Appellee said he rejected this suggestion. They discussed his one per cent commission arrangement in the meeting in Iberia, and that he and Tanenbaum again discussed it on the plane trip back to New York. He said that later Tanenbaum told him over the telephone he had consummated the deal with Cunningham and "that he thought it was a good piece of business for him and that in no way would it interfere with any situation that I was having with Mr. Tanenbaum as far as our deal, as far as commissions were concerned." He also testified that he was the procuring cause of Cunningham doing business with appellant and was claiming a commission on both sales to Iberia Manufacturing Company. These were the two sales which the jury found, in answer to Special Issues Nos. 4 and 8, had been produced by appellee. Applying the same tests, and under the same authorities, hereinabove mentioned in our disposition of Point of Error No. 7, we find that there is evidence of probative value to support the answers to Special Issues Nos. 2 and 4 and therefore overrule Points of Error Nos. 9 and 11.

We have also carefully considered all of the evidence pertaining to these issues and are not persuaded that the answers of the jury thereto are so contrary to the great weight of the evidence as to be manifestly wrong. In re King's Estate, supra; Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 T.L.R. 361. Therefore, Points of Error Nos. 10, 12 and 14 are overruled.

By its Point of Error No. 13 appellant says the trial court erred in submitting Special Issue No. 8 (as to whether appellant agreed to pay appellee a commission of one

per cent per yard on material furnished to Iberia Manufacturing Company on sub-contract to Brownwood Manufacturing Company) because the undisputed evidence was that Iberia had bought the material from appellant prior to the letting of the subcontract to Brownwood and as a matter of law appellee could not have been the producing cause of the sale. This point must be overruled because the evidence was not undisputed. It is true that Cunningham, a disinterested witness, so testified but his testimony on that matter is in conflict with that of appellee. We hold, therefore, that Special Issue No. 8 was properly submitted and overrule Point of Error No. 13.

The judgment of the trial court is

Affirmed.