Affirmed in Part, Reversed and Rendered in Part, and Majority and
Concurring Opinions filed January 24, 2008








Affirmed in
Part, Reversed and Rendered in Part, and Majority and Concurring Opinions filed
January 24, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00357-CV

____________

 

WESTERNGECO, L.L.C. AND
SCHLUMBERGER TECHNOLOGY CORPORATION, Appellants

 

V.

 

INPUT/OUTPUT, INC., Appellee

 



 

On Appeal from the 164th District
Court

Harris County, Texas

Trial Court Cause No. 04-67890

 



 

M A J O R I T Y   O P I N I O N








This case arises out of a dispute over the terms of a
settlement agreement between business competitors.  One party brought a
declaratory judgment action seeking various declarations regarding the terms of
the settlement agreement.  The trial court granted the plaintiff=s motion for
summary judgment, impliedly making the three declarations sought in the
motion.  The defendants never sought declaratory relief; rather, they asserted
in a cross-motion for summary judgment that all of the requested declarations
should be denied as a matter of law.  We reverse and render in part and affirm
in part.

                          Factual and Procedural Background

In 1998, appellant Schlumberger Technology Corporation (ASchlumberger@) filed suit
asserting various contract and tort claims against appellee Input/Output, Inc.
(AInput@) and former
Schlumberger employees working for Input.  Schlumberger sought damages and also
asked the court to permanently enjoin Input from (1) using or disclosing
Schlumberger=s confidential information and (2) soliciting for
employment any Schlumberger employee who is involved in the design of seismic
data acquisition systems or who has been exposed to confidential Schlumberger
information regarding seismic data acquisition systems.  To resolve the 1998
lawsuit the parties entered into a settlement agreement in November 1998 (ASettlement
Agreement@).  The material terms are as follows:

This Settlement Agreement is made by and among Schlumberger Technology
Corporation (ASchlumberger@), a Texas corporation . . .,
acting on behalf of itself and its Affiliates; Input/Output, Inc. (AI/O@), a Delaware corporation . . ., acting on behalf of
itself and its Affiliates; and the following individuals: Rex K. Reavis, James AJerry@ Iseli, and Kambiz Afkhami (these three individuals
collectively referred to herein as the AIndividual Defendants@).  

WHEREAS, the Geco-Prakla division of Schlumberger (AGeco-Prakla@) provides seismic services to the
oil industry, and I/O supplies seismic equipment and systems to various
companies, including Schlumberger, that provide such seismic services (such
seismic services and seismic equipment and systems referred to herein as ASeismic Field@); . . .

. . .

4.       I/O agrees that it will not offer
employment to or engage as a consultant any current or former employee of
Schlumberger who is working or has worked in the Seismic Field unless at least
two (2) years have passed from the date such employee or former employee either
ceased working for Schlumberger in the Seismic Field or has left Schlumberger.

. . .








13.     This Agreement is binding upon and shall
inure to the benefit of the parties hereto and their respective successors in
interest and legal representatives.  

. . .

15.     As used
herein, AAffiliate@ means any present
or future corporation that directly or indirectly controls, is controlled by,
or is under common control with either party, where Acontrol@ means the
ownership, direct or indirect, of at least 50% of voting securities of such
corporation.

Approximately two years later, in September 2000,
Schlumberger and Baker Hughes, Inc. entered into a Master Formation Agreement,
in which Schlumberger transferred to a joint venture all of its seismic
business assets, including but not limited to, contracts, claims against third
parties, intellectual property, and information technology.  The
summary-judgment evidence does not show whether appellant WesternGeco, L.L.C. (AWesternGeco@) is the joint
venture to which this transfer was made, and it does not reflect whether
WesternGeco is an affiliate of Schlumberger.[1] 
For the purposes of this appeal, we presume, without deciding, that Schlumberger
and Baker Hughes created WesternGeco to handle their seismic business and that
WesternGeco is an AAffiliate@ of Schlumberger,
as defined in the Settlement Agreement.








After WesternGeco threatened to sue Input to enforce the
above paragraph 4 of the Settlement Agreement (hereinafter AParagraph 4@), Input filed
this lawsuit against Schlumberger and WesternGeco (hereinafter the ASchlumberger
Parties@) asking the court
to make various declarations regarding the proper construction of Paragraph 4
and also seeking attorney=s fees.[2]
The Schlumberger Parties never asserted a counterclaim for declaratory relief;
they simply argued that, as a matter of law, Input was not entitled to the
relief it sought.

Input filed a motion for summary judgment seeking a
declaration that the Settlement Agreement is void on the alleged grounds that
it is (1) an illegal restraint of trade, and (2) a covenant not to compete that
violates section 15.50 of the Texas Business and Commerce Code.  The trial
court denied this motion. 

Input filed a second
motion for summary judgment asserting that the trial court should render a
summary judgment making the following declarations:

(1)     Because Paragraph 4 is silent as to its
duration, either party may terminate it at will.

(2)     Alternatively, any implied reasonable time
period during which Paragraph 4 was not terminable at will already has expired
so that Paragraph 4 is now terminable at will.

(3)     Paragraph
4 applies to Schlumberger employees who are within its scope but not to
WesternGeco employees.

Input
also sought attorney=s fees.  In its second motion, Input did
not seek a final summary judgment because, even if the trial court granted all
the relief sought in this motion, Input still had pending requests in its
petition for additional declaratory relief.  The Schlumberger Parties filed a
cross-motion for summary judgment, in which they argued that, as a matter of
law, the trial court should deny all of the requests for declaratory relief in
Input=s petition and
award Chapter 37 attorney=s fees to the Schlumberger Parties.  In
this cross-motion the Schlumberger Parties did seek a final judgment.  








After a
hearing on these cross-motions, the trial court signed an interlocutory order
in which it granted Input=s motion and did not mention the Schlumberger Parties= motion. Input then filed a motion to
modify the summary-judgment order.  Input asked the trial court to modify its
order to (1) deny the Schlumberger Parties= motion, (2) deny Input=s request for Chapter 37 attorney=s fees, and (3) deny all of Input=s claims the court did not expressly
grant in the partial summary judgment in its favor.  The trial court granted
this motion and rendered a final judgment as requested.  Even though in its
motion for summary judgment Input sought alternative and inconsistent
declarations, the trial court did not make any declarations in its judgment. 
Instead, the court simply stated that it granted Input=s second motion
for summary judgment.  No party has complained about the form of the trial
court=s judgment;
therefore, we need not address the omission of express declarations in the
court=s declaratory
judgment.  We treat the trial court=s judgment as
having impliedly made the three declarations requested in the motion.  The Schlumberger
Parties have appealed from the trial court=s final judgment.[3] 
Input has not appealed.

                                         II. Standards of Review

In a traditional motion for summary judgment, if the movant=s motion and summary-judgment
evidence facially establish its right to judgment as a matter of law, the
burden shifts to the nonmovant to raise a genuine, material fact issue
sufficient to defeat summary judgment.  M.D. Anderson Hosp. & Tumor
Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo
review of a trial court=s summary judgment, we consider all the
evidence in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could, and disregarding
contrary evidence unless reasonable jurors could not.  Mack Trucks, Inc. v.
Tamez, 206 S.W.3d 572, 582 (Tex. 2006).  The evidence raises a genuine
issue of fact if reasonable and fair-minded jurors could differ in their
conclusions in light of all of the summary-judgment evidence.  Goodyear Tire
& Rubber Co. v. Mayes, 236 S.W.3d 754, 756 (Tex. 2007). 








We may review the trial court=s denial of the
Schlumberger Parties= motion because in it they sought a final
summary judgment.  See CU Lloyd=s of Texas v.
Feldman, 977 S.W.2d 568, 569 (Tex. 1998).  When both parties move for summary
judgment, each party must carry its own burden, and neither can prevail because
of the failure of the other to discharge its burden.  INAC Corp. v.
Underwriters at Lloyd=s, 56 S.W.3d 242,
247 (Tex. App.CHouston [14th Dist.] 2001, no pet.).  Because each
party was a movant, the burden for each was the same: to establish entitlement
to a summary judgment by conclusively proving all the elements of the claim or
defense as a matter of law.  Id. 

                                                    III.  Issues and Analysis

A.        Is there a justiciable case
or controversy to support this court=s jurisdiction?

The
Schlumberger Parties have filed a motion to dismiss this appeal for lack of
jurisdiction asserting that there is no case or controversy.  The Texas
Declaratory Judgment Act is a remedial statute whose purpose is to afford
relief from uncertainty and insecurity with respect to rights, status, and
other legal relations.  See  Tex.
Civ. Prac. & Rem. Code Ann.
' 37.002(b) (Vernon 1997); Bonham
State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995).  We must construe
and administer this statute liberally.  See  Tex. Civ. Prac. & Rem. Code Ann. ' 37.002(b); Bonham State Bank, 907 S.W.2d at 467.  A
court of record, acting within its jurisdiction, has power to declare rights,
status, and other legal relations whether or not further relief is or could be
claimed.  Tex. Civ. Prac. & Rem.
Code Ann. ' 37.003(a).  A person with an
interest in a written contract may ask a court to determine any question of
construction or validity arising under the contract and obtain a declaration of
rights, status, or other legal relations thereunder.  Id. ' 37.004(a).  A contract may be
construed either before or after a breach.  Id. ' 37.004(b). 








A
declaratory judgment is appropriate only if a justiciable controversy exists as
to the rights and status of the parties and the controversy will be resolved by
the declaration sought.  Bonham State Bank, 907 S.W.2d at 467.  For a
justiciable controversy to exist, there must be  a real and substantial
controversy involving a genuine conflict of tangible interests and not merely a
theoretical dispute.  Id.  The Schlumberger Parties have described Input
as a Abusiness competitor@ who had been Apoaching@ Schlumberger employees in 1998 in an
effort to have these employees work on seismic systems that would compete
directly with the systems on which they had worked at Schlumberger, making
disclosure of Schlumberger=s confidential information inevitable.  Schlumberger filed
suit against Input and others, and the parties settled that case in 1998  by
means of the Settlement Agreement.  The summary-judgment evidence contains the
affidavit of Input=s Vice President and General Counsel, in which he testifies
as follows:

It is [Input=s] belief that it has fully performed
all of its obligations under the Settlement Agreement, and the terms thereof,
including Paragraph 4, are no longer in force.  [WesternGeco], on the other
hand, has represented to [Input] that it is the successor-in-interest to
Schlumberger=s rights under the Settlement Agreement and is entitled to and intends to
enforce the language of Paragraph 4. [WesternGeco] has asserted to [Input] that
the language of Paragraph 4 prevents, in perpetuity, [Input] from hiring any
current or former employee of [WesternGeco], or any of its affiliates, who have
any connection to the seismic industry. [WesternGeco] has also threatened to
bring suit against [Input] to enforce the provision.

No summary-judgment
evidence contradicts this testimony.  Input also attached to its motion for
summary judgment a prior filing in the trial court in which the Schlumberger
Parties state that Input Adeclares that it is suffering from >a material competitive disadvantage
in the seismic industry= and has apparently determined that it must break its promise
[not to solicit for employment any of Schlumberger=s employees who worked in the seismic
field until two years after they have left the company] . . . .@[4]  








The
undisputed summary-judgment evidence supports a conclusion that Input wants to
hire the Schlumberger Parties= employees in the Seismic Field and that WesternGeco is
threatening to sue Input to prevent it from taking such action.  WesternGeco
asserts that its employees are protected by Paragraph 4 because they constitute
Acurrent or former employee[s] of
Schlumberger@ under Paragraph 4.  Even though WesternGeco did not exist in 1998 when
the Settlement Agreement was signed, WesternGeco asserts that Schlumberger
entered into the Settlement Agreement on its behalf. 

The
Schlumberger Parties do not argue that Input must offer employment to or engage
as a consultant a Schlumberger or WesternGeco employee who has worked or is
working in the Seismic Field before there can be a justiciable controversy. 
The Schlumberger Parties acknowledge that their construction of the Settlement
Agreement differs significantly from Input=s construction; however, they contend
that this controversy is not justiciable because (1) A[Input] has not identified C even anonymously C one current or former Schlumberger
employee that it would otherwise hire if not for the [Settlement Agreement],@ (2) A[t]here is no indication that [Input]
is threatening to hire any particular current or former Schlumberger employee,@ and (3) Input has not shown that it
has Aany present or prospective intention
to violate the Settlement Agreement.@  Schlumberger argues that to show a
justiciable controversy, Input must identify in some way a current or former
Schlumberger employee that it wants to hire but cannot hire if Paragraph 4 is
still in effect.  We conclude Input is not required to do so.

This
case presents a bona fide, concrete controversy ripe for resolution by way of
declaratory judgment.  See Bonham State Bank, 907 S.W.2d at 467.  The
record reflects a real and substantial controversy involving a genuine conflict
of tangible interests and not merely a theoretical dispute.  See id.; City
of Dallas v. VSC, LLC, No. 05-05-01227-CV, CS.W.3dC,C, 2008 WL 54484, at *8B9 (Tex. App.CDallas Jan. 4, 2008, no pet. h.); Monk
v. Pomberg, No. 01-05-00429-CV, CS.W.3dC,C, 2007 WL 926491, at *6 (Tex. App.CHouston [1st Dist.] Mar. 29, 2007, no
pet.).  Furthermore, presuming, without deciding, that it is necessary to show
a justiciable controversy, the evidence mentioned above indicates that Input is
threatening to hire current or former employees of the Schlumberger Parties
whom the Schlumberger Parties claim are covered by Paragraph 4.  A justiciable
controversy exists.  Therefore, we deny the Schlumberger Parties= motion to dismiss.








B.        Did
the trial court err by concluding that Paragraph 4 has been impliedly
terminable at will since the execution of the Settlement Agreement?

Under
their first issue, the Schlumberger Parties challenge the trial court=s implied declaration that Paragraph
4 is impliedly terminable at will by either party.  In Paragraph 4, Input
agreed not to offer employment to or engage as a consultant any current or
former employee of Schlumberger who is working or has worked in the Seismic
Field unless at least two years have passed from the date such employee or
former employee either ceased working for Schlumberger in the Seismic Field or
has left Schlumberger.  The Settlement Agreement is silent as to the duration
of Input=s covenant in Paragraph 4.  The trial
court ruled as a matter of law that there is an implied contractual term under
which Paragraph 4 is terminable at will by either party.  








There is
uncertainty as to the legal standard for determining the duration of an
agreement that contains no express term.  In some cases courts indicate that
the implied term should be terminable at will, while in other cases courts
state that the implied term should be for a reasonable time.  See Clear Lake
City Water Auth. v. Clear Lake Utilities Co., 549 S.W.2d 385, 390B91 (Tex. 1977).  In one of the cases
upon which Input relies, Clear Lake City Water Authority v. Clear Lake
Utilities Co., the Texas Supreme Court noted both lines of cases.  See
id.  However, the Clear Lake City Water Authority court stated that
it did not need to decide which line of cases to follow because the court was
required to imply the contract was terminable at will given that one of the
parties was a governmental entity incapable of contracting for a reasonable
time for performance.  See id.  Because the high court=s holding was based on one of the
parties= status as a governmental entity, Clear
Lake City Water Authority is not on point in the case at hand, and the
court=s statements regarding the two lines
of cases are obiter dicta.  See id.  Likewise, the other statements from
cases upon which Input relies for implying a terminable-at-will provision are
either based on one of the parties= status as a governmental entity or
are obiter dicta.[5]  Neither the Clear
Lake City Water Authority opinion nor any other Texas case appears to
explain how courts should determine whether to imply that an agreement is
terminable at will or to imply that it lasts for a reasonable time.  However,
we need not address how this determination should be made today.








To imply
a term into an agreement, it must appear that it is necessary to do so in order
to effectuate the purposes of the contract as a whole as gathered from the
written instrument. See HECI Exploration Co. v. Neel, 982 S.W.2d 881,
888 (Tex. 1998); Fein v. R.P.H., Inc., 68 S.W.3d 260, 268 (Tex. App.CHouston [14th Dist.] 2002, pet.
denied).  In the Settlement Agreement, the parties settled a lawsuit in which
Schlumberger sought a permanent injunction precluding Input from (1) using or
disclosing Schlumberger=s confidential information and (2) soliciting for employment
at Input any Schlumberger employee who is involved in the design of the seismic
data acquisition systems or who has been exposed to confidential Schlumberger
information regarding seismic data acquisition systems.  In the Settlement
Agreement, Input agreed that it would not solicit or induce, directly or
indirectly, the use or disclosure of certain confidential information belonging
to Schlumberger.  This covenant remains in effect beyond December 1, 2001,
until that information, as defined in the Settlement Agreement, no longer
exists.  Part of Input=s agreement in Paragraph 4 is to not offer employment to any
current Schlumberger employee who is working in the Seismic Field unless at
least two years have passed from the date the employee either stopped working
for Schlumberger in the Seismic Field or left Schlumberger.  Implying an
agreement that Input=s covenant in Paragraph 4 is terminable at will is not
necessary to effectuate the purposes of the Settlement Agreement as a whole as
gathered from the written instrument; in fact, it would contradict these
purposes.  Therefore, we conclude that the trial court erred by implicitly
declaring an implied term that Paragraph 4 is terminable at will by either
party. See HECI Exploration Co., 982 S.W.2d at 888; Fein, 68
S.W.3d at 268.  The trial court should have denied Input=s motion in this regard and granted
the Schlumberger Parties= motion seeking a take-nothing judgment as a matter of law as
to this requested declaration. We sustain the Schlumberger Parties= first issue to this extent. 

C.        Did the trial court err by
concluding that Paragraph 4 is terminable at will because any implied
reasonable duration has expired as a matter of law?








Under
their first issue, the Schlumberger Parties also challenge the trial court=s implied declaration that Input=s covenant under Paragraph 4 is
terminable at will because any reasonable time period during which Paragraph 4
was not terminable at will already has expired, so that Paragraph 4 is now
terminable at will.  Though obiter dicta in Clear Lake City Water Authority suggests
such an implied duration may be possible, precedent from the Texas Supreme
Court and this court shows that, if the Areasonable duration@ rule applies, this court would imply
that Paragraph 4 expires after a reasonable period of time rather than becoming
terminable at will after a reasonable time.  Compare Clear Lake City Water
Auth., 549 S.W.2d at 390B91 (stating in dicta that, under one line of cases, courts
imply a reasonable duration during which time the agreement is not terminable
at will), with Hall v. Hall, 308 S.W.2d 12, 16 (Tex. 1957)
(stating that A[w]hen the parties omit an express stipulation as to time, it is in
accord with human experience and accepted standards of law for us to assume
that they meant whatever term of days or years might be reasonable in the light
of the circumstances before them at the date of the contract@); Cheek v. Metzer, 291 S.W.
860, 864 (Tex. 1927) (holding that, in the absence of a stipulation as to the
time for performing the terms of a contract, the law allows a reasonable time);
Hart v. Bullion, 48 Tex. 278, 289 (Tex. 1877) (stating that, where a
contract does not fix a time for performance, the law allows a reasonable time
for performance); Metromarketing Services, Inc. v. HTT Headwear, Ltd.,
15 S.W.3d 190, 195B96 (Tex. App.CHouston [14th Dist.] 2000, no pet.) (stating that when the
parties do not fix the time of performance, courts imply a reasonable time for
performance).  For this reason, the trial court erred in ruling as a matter of
law that Paragraph 4 is terminable at will because any implied reasonable time
period during which Paragraph 4 was not terminable at will already has
expired.  The trial court should have denied Input=s motion in this regard[6]
and granted the Schlumberger Parties= motion seeking a take-nothing
judgment as a matter of law as to this requested declaration.  We sustain the Schlumberger
Parties= first issue to this extent.

D.        Did the trial court err by
concluding that Paragraph 4 applies to Schlumberger employees who are within its scope but not to
WesternGeco employees?








Under
their third issue, the Schlumberger Parties also challenge the trial court=s implied declaration that Paragraph
4 applies to Schlumberger employees who are within its scope but not to
WesternGeco employees.[7]  Input=s covenant in Paragraph 4 covers Aany current or former employee of
Schlumberger who is working or has worked in the Seismic Field unless at least
two (2) years have passed from the date such employee or former employee either
ceased working for Schlumberger in the Seismic Field or has left Schlumberger.@  In the Settlement Agreement, ASchlumberger@ is defined as ASchlumberger Technology Corporation.@  WesternGeco is a separate corporate
entity from Schlumberger, and there has been no pleading or proof of any theory
by which the corporate veil between these two entities may be pierced.  The
trial court correctly determined that under the unambiguous language of the
Settlement Agreement, Paragraph 4 applies to Schlumberger employees who are
within its scope but not to WesternGeco employees.  See Humble Explor. Co.
v. Amcap Petroleum Associates-1977, 658 S.W.2d 860, 862 (Tex. App.CDallas 1983, writ ref=d n.r.e.) (applying unambiguous
contractual definition in declaratory-judgment case). 

The
Schlumberger Parties assert that the term ASchlumberger,@ as used in the Settlement Agreement,
must include WesternGeco to avoid rendering meaningless the language making
WesternGeco a party to the Settlement Agreement.  The Schlumberger Parties base
this argument on the following reasoning:

!         The Settlement Agreement defines AAffiliates@ as
Aany present or future corporation that directly or
indirectly controls, is controlled by, or is under common control with either
party, where >control=
means the ownership, direct or indirect, of at least 50% of voting securities
of such corporation.@

!         WesternGeco is an Aaffiliate@ of Schlumberger because it is a future corporation
that is controlled by Schlumberger, where Acontrol@ means the ownership, direct or indirect, of at least
50% of voting securities of such corporation.

!         The Settlement Agreement states that it was made by, among
other parties, ASchlumberger Technology Corporation (ASchlumberger@),
a Texas corporation . . ., acting on behalf of itself and its Affiliates . . .@

!         Because Schlumberger entered into the Settlement Agreement on
behalf of its Affiliates, including WesternGeco, the term ASchlumberger,@ as
used in the Settlement Agreement, includes WesternGeco.








!         The Schlumberger Parties=
proffered interpretation is necessary to give meaning to the contractual
language making WesternGeco a party to the Settlement Agreement because, if ASchlumberger@
does not include WesternGeco, then the Settlement Agreement imposes no burden
on WesternGeco and gives no benefit to WesternGeco.  The Schlumberger Parties
assert that this result would render meaningless the language making
WesternGeco a party to the Settlement Agreement.  








The
Settlement Agreement contains language under which Schlumberger purportedly Amakes@ the agreement Aon behalf of@ its future affiliates.  However,
when Schlumberger entered into the Settlement Agreement in 1998, WesternGeco,
allegedly one of its Afuture affiliates,@ did not exist.  Because WesternGeco
and Schlumberger are separate entities, a contract with Schlumberger is
generally not a contract with WesternGeco.  See In re Merrilllynch Trust Co.
FSB, 235 S.W.3d 185, 191 (Tex. 2007).  Moreover, because a non-existent
entity cannot enter into a contract, Schlumberger could not and did not bind
WesternGeco merely by signing a contract in which Schlumberger states that it
is acting on behalf of itself and its future affiliates.  The Schlumberger
Parties= argument fails because they seek to
give meaning to language that could not have been effective as to WesternGeco.[8] 
       Furthermore, even presuming that the Settlement Agreement includes
WesternGeco as a party, that would not render the language meaningless or leave
WesternGeco without a burden or benefit, as the Schlumberger Parties urge,
because the Settlement Agreement still would refer to WesternGeco in stating
that the agreement is binding upon and inures to the benefit of the parties
thereto and that the parties agree that Texas law will apply.  The statement
that the agreement is binding upon WesternGeco could refer to WesternGeco=s binding agreement that Texas law
governs.  In addition, because the Settlement Agreement seeks to protect
certain confidential information belonging to Schlumberger, these protections
could inure to the benefit of WesternGeco.  

In sum,
the unambiguous definition of ASchlumberger@ in the Settlement Agreement does not include alleged future
affiliates such as WesternGeco, and Paragraph 4 does not apply to WesternGeco
employees.  In addition, even presuming, without deciding, that WesternGeco is
an affiliate on whose behalf Schlumberger entered into the Settlement
Agreement, this fact would not render any language of the Settlement Agreement
meaningless.  Accordingly, we overrule the Schlumberger Parties= challenge to the trial court=s implied declaration that Paragraph
4 applies to Schlumberger employees who are within its scope but not to
WesternGeco employees.  We have addressed all the issues necessary to the
disposition of this appeal.[9]

                                                            IV.  
Conclusion








We deny the Schlumberger Parties= motion to dismiss for lack of jurisdiction because a
justiciable controversy exists.  The trial court erred in impliedly declaring
as a matter of law that (1) Paragraph 4 is terminable at will by either party
and (2) alternatively, Paragraph 4 is terminable at will because any implied
reasonable time period during which Paragraph 4 was not terminable at will
already has expired.  Accordingly, we reverse these portions of the trial court=s judgment and render judgment that Input take nothing
as to these two requested declarations. Under the unambiguous language of the
Settlement Agreement, the trial court correctly determined that Paragraph 4
applies to Schlumberger employees who are within its scope but not to
WesternGeco employees.  Accordingly, we affirm the remainder of the trial court=s judgment.  

 

                                                                              

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Majority and
Concurring Opinions filed January 24, 2008.

Panel consists of Justices Frost,
Seymore, and Guzman.  (Guzman, J., concurring).

Publish C Tex.
R. App. P. 47.2(b).









[1]  The trial court struck two paragraphs from the
affidavit of Dale Gaudier, in which Gaudier stated that WesternGeco is the
successor-in-interest to Schlumberger=s
seismic business and that Schlumberger owns at least 50% of the voting
securities in WesternGeco.  Although Schlumberger and WesternGeco challenge
this evidentiary ruling on appeal, we need not address this issue to adjudicate
this appeal.





[2]  Although the parties often refer generally to the
Settlement Agreement, it is clear that the implied declarations before this
court on appeal pertain only to Paragraph 4.





[3]  The Schlumberger Parties seek a reversal of the
trial court=s judgment for lack of a justiciable controversy, or
in the alternative, a reversal and rendition of judgment based on their
cross-motion.  No party has sought a reversal and remand to the trial court.





[4]  The Schlumberger Parties are quoting from an affidavit
that Input filed in support of its first motion for summary judgment.  This
exhibit is not a judicial admission but it is part of the summary-judgment
evidence.





[5]  One of these cases is based on one of the parties= status as a governmental entity.  See City of
Corpus Christi v. Taylor, 126 S.W.3d 712, 722B23 (Tex. App.CCorpus Christi 2004, pet. withdrawn).  Others are
cited for statements that are obiter dicta.  See Kennedy v. McMullen, 39
S.W.2d 168, 174 (Tex. Civ. App.CBeaumont 1931,
writ ref=d) (overruling appellate contention based on
appellants= inability to terminate contract unless they stopped
operating a bus line while stating in dicta that generally a contract that does
not specify duration may be terminated at will); Farah v. Mafrige &
Kormanik, P.C., 927 S.W.2d 663, 678 (Tex. App.CHouston [1st. Dist.] 1996, no writ) (stating that
contract was also terminable at will only after concluding the contract was too
indefinite to be enforced); Ingram Freezers v. Atchison, T & S. F. Ry.
Co., 464 S.W.2d 915, 920 (Tex. Civ. App.CDallas
1971, writ ref=d n.r.e.) (concluding that trial court correctly rendered
directed verdict because there was no agreement to furnish rail service and
then stating that another reason for affirming the directed verdict is that any
such agreement would have been terminable-at-will); Tanenbaum Textile Co. v.
Sidran, 423 S.W.2d 635, 637 (Tex. Civ. App.CDallas 1967, writ ref=d n.r.e.)
(indicating that agreement was terminable at will in the course of holding that
contract was not valid for being indefinite because it did not specify a time
for performance).





[6]  In addition, even if the trial court had ruled that
any reasonable duration for Input=s
covenant in Paragraph 4 has expired as a matter of law, this ruling still would
have been error.  If a reasonable time is implied, the determination of what is
a reasonable time is generally a question of fact that is based on the
circumstances surrounding the adoption of the agreement, the situation of the
parties when they entered into the agreement, and the subject matter of the
agreement.  See Hall, 308 S.W.2d at 16B17; Cheek, 291 S.W.2d at 864; Hart, 48 Tex. at 289; Metromarketing
Services, Inc., 15 S.W.3d at 195B96. 
Although summary judgment would be possible if the evidence is uncontroverted
regarding these matters, the only evidence that Input provided the trial court
in this regard is the Settlement Agreement itself.  Lacking any extrinsic
evidence bearing on this issue, the trial court could not have determined as a
matter of law that any reasonable duration for Input=s covenant in Paragraph 4 has expired.  See Hall,
308 S.W.2d at 16B17; Cheek, 291 S.W.2d at 864; Hart, 48
Tex. at 289; Metromarketing Services, Inc., 15 S.W.3d at 195B96. 





[7]  They also argue that Input=s affiliates are subject to the Settlement Agreement. 
However, because the trial court made no such implied declaration, that issue
is not before us.





[8]  Even if Schlumberger stated in the Settlement
Agreement that its non-existent, future affiliates are parties to the
Settlement Agreement, that would not bind these future affiliates to the
agreement unless they are so bound under a legal theory such as piercing the
corporate veil, agency, estoppel, or ratification.  See, e.g., CNOOC
Southeast Asia Ltd. v. Paladin Res. (SUNDA) Ltd., 222 S.W.3d 889, 899 (Tex.
App.CDallas 2007, pet. denied) (stating that to bind an
affiliate under agency principles, there must be evidence of conduct by the
affiliate that would give rise to actual or apparent authority).  However, any
facts that might bind WesternGeco under these theories would not have come into
existence until after WesternGeco was created.  The trial court=s third implied declaration addresses the meaning of
Paragraph 4 and does not address whether, after its creation, WesternGeco
engaged in acts that would bind it to the Settlement Agreement under one of
these theories.  Therefore, we need not address these theories; rather, we are
addressing the Schlumberger Parties=
argument that we must interpret ASchlumberger@ to include WesternGeco, because otherwise the
language making future affiliates parties to the Settlement Agreement would be
rendered meaningless. 





[9]  Input asserts that the issue of whether Paragraph 4
is an illegal restraint of trade is before this court.  We disagree.  This
issue was a ground in Input=s first motion
for summary judgment, which the trial court denied.  The Schlumberger Parties
have not argued on appeal that the trial court erred in denying Input=s first motion for summary judgment.  The
illegal-restraint-of-trade issue was not a ground in Input=s second motion for summary judgment, which the trial
court granted. Furthermore, by stating that the grant of its second motion and
denial of the Schlumberger Parties=
motion Aended the dispute@
and by moving the trial court to render a take-nothing judgment as to all the
declaratory relief sought in Input=s
petition but not in its second motion, Input waived all of these requests,
including the requested declaration that Paragraph 4  is an illegal restraint
of trade.  This reality is not altered by the Schlumberger Parties= appeal of the trial court=s final judgment or by their briefing on appeal in
support of the proposition that Paragraph 4 is not an illegal restraint of
trade.